HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON – AT SEATTLE

| | |
|---|---|
| SANTREL McCLUSKY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DOMINO'S PIZZA LLC, a Michigan limited liability company conducting business in the State of Washington, and DOES 1 through 100, inclusive,<br><br>Defendants. | NO. 2:26-cv-03189-JLR<br><br>**DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>**NOTE ON MOTION CALENDAR: October 23, 2026** |

## I. INTRODUCTION & RELIEF REQUESTED

Plaintiff Santrel McClusky (Plaintiff) filed claims in King County alleging meal and rest break, sick leave, and overtime violations by Defendant Domino's Pizza LLC (Defendant or Domino's). Domino's removed this action and now respectfully moves, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–16 (FAA), to stay these proceedings and to compel to arbitrate the claims in Plaintiff's Class Action Complaint.

Plaintiff and Defendant agreed to arbitrate, on an individual basis, all claims arising from or related to Plaintiff's employment with Domino's with an impartial third-party arbitrator governed by the American Arbitration Association (AAA) rules. Plaintiff's claims



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908

brought in this action fall squarely within the scope of the Arbitration Agreement. Accordingly, Domino's moves this Court to compel arbitration and to stay proceedings.[1]

## II. PLAINTIFF SIGNED AN ARBITRATION AGREEMENT WITH DOMINO'S

Plaintiff is a former employee of Domino's. *Id.* at 3; Declaration of Kashmiere Apollon In Support of Defendant's Motion to Compel Arbitration ("Apollon Decl."), ¶ 5. Plaintiff was hired as a Yard Driver. Apollon Decl., ¶ 6; Declaration of Mikell Young In Support of Defendant's Motion to Compel Arbitration ("Young Decl."), ¶¶ 5–7. Plaintiff was employed as a Yard Driver from November 20, 2025, until his termination on March 13, 2026, for violations of company policies. Apollon Decl., ¶¶ 7–12. These violations are separate and unrelated to the claims brought by Plaintiff.

The role of a Yard Driver is limited to shuttling trucks around Domino's Supply Chain Center. Young Decl. ¶ 7. When Domino's Supply Chain Center receives product, the Yard Driver generally plays no role in unloading product. *Id.* at ¶ 5. The Warehouse Associates unload the product into Domino's Supply Chain Center. *Id.* For outbound product, a Yard Driver moves one of Domino's trailers to the loading dock but does not assist with loading the trailer. *Id.* at ¶ 6. The Warehouse Associates load the trailer. *Id.* Once the trailer is loaded, the Yard Driver moves the loaded trailer to another area of the yard where a separate delivery

[1] By filing this motion, Domino's does not waive its right to assert any affirmative defenses, including but not limited to: (1) failure to state a claim; (2) Plaintiff lacks standing; (3) failure to mitigate; (4) Plaintiff is subjected to mandatory arbitration and class action waiver; (5) Defendant is not responsible for damages caused by Plaintiffs or other not under its control; (6) Defendant is not the cause of Plaintiff's damages; (7) Defendant's actions and conduct were objectively reasonable under the circumstances; (8) Defendant's actions or omissions were legitimate, made in good faith, and reasonable; (9) any alleged wage violations were not willful and/or are the subject of a bona fide dispute; (10) any alleged failure to pay wages was de minimis; (11) the failure to take meal periods was knowingly and voluntarily waived; (12) Plaintiff's claims are barred because Defendant paid all wages and other compensation; (13) Plaintiff's claims are barred by compromise and settlement, accord and satisfaction, unclean hands, laches, release, after-acquired evidence, and estoppel; (14) the proposed class and subclass fail to satisfy the prerequisites for class or collective treatment; (15) the Class Action Complaint fails to adequately plead a valid class or collective claim as to each allegedly similarly situated putative class member and fails to identify any other potential plaintiffs;; (16) Class and subclass certification are inappropriate due to conflicts of interest; (17) Plaintiff's claims are barred by the applicable statute of limitations. Defendant reserves the right to allege additional defenses in filing its Answer and as they may become known during discovery.



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908

driver takes it for outbound delivery. *Id.* Yard Drivers are also responsible for ensuring trailers are washed and cleaned out and communicating maintenance needs. *Id.* at ¶ 8.

At the outset of Plaintiff's employment on November 20, 2025, Plaintiff was provided with the Arbitration Agreement and was given time to review it. Apollon Decl., ¶¶ 7–8. The Arbitration Agreement is three pages long and includes a cover letter explaining what the Arbitration Agreement is. Apollon Decl., ¶ 7, Exhibits A and B. The cover letter is from the Vice President of Human Resources, Andrew Ueeck, summarizing what the Arbitration Agreement entails. Apollon Decl., ¶ 7, Exh. A. In bold letters, the letter states:

> **By signing the Arbitration Agreement and not opting out, both you and the Company are giving up various rights, including the right to a trial by jury as well as any right to arbitrate as a class representative, as a class member, or in a collective action.**

*Id.* The second page is titled in bold large letters "**SIGNIFICANT FEATURES OF THE DOMINO'S ARBITRATION PROGRAM.**" *Id.* This page has seven bullet points outlining the benefits to the Arbitration program. The Arbitration Agreement follows these two pages. Apollon Decl., ¶ 7, Exh. B.

Page two of the Arbitration Agreement includes the waiver of jury trial provision in bold and all caps lettering:

> **Waiver of Jury Trial. EMPLOYEE AND THE COMPANY UNDERSTAND THAT BY AGREEING TO THIS BINDING ARBITRATION PROVISION, BOTH GIVE UP THEIR RIGHT TO TRIAL BY JURY OF ANY CLAIM EITHER MAY HAVE AGAINST THE OTHER, EXCEPT AS EXPRESSLY PROVIDED HEREIN.**

*Id.* Right after that provision, the opt-out provision explains how an employee can opt out of the Arbitration agreement.

> **Exclusive Opt-Out Right.** Employee has the right to opt out of the obligation set forth herein to submit to binding arbitration. To opt out, Employee must send via electronic mail or first-class mail, within **thirty (30) calendar days** of signing this Arbitration Agreement, an email to [HR email] or a letter addressed to Domino's Pizza LLC, Attention: Team



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908

> Leader, Human Resources Shared Services [address omitted], stating that Employee has elected to opt out of the Arbitration Agreement. The email/letter must clearly state Employee's name, employee ID, and a telephone number where Employee can be reached…Absent the proper and timely exercise of this opt-out right, Employee will be required to arbitrate all disputes encompassed by this Arbitration Agreement.

Apollon Decl., ¶ 11, Exh. B. The provision boldly provides the time period for which the employee must opt-out by. *Id.* Plaintiff did not opt out of the Arbitration Agreement. *Id.* at ¶ 11. As such, Plaintiff assented to the terms of the Arbitration Agreement. *Id.* at ¶ 9.

The Arbitration Agreement also encompasses the claims asserted by Plaintiff in his Class Action Complaint. By its terms, the Arbitration Agreement applies to claims arising out of Plaintiff's employment, including claims based on contract, tort, statute, regulation, ordinance, equity, or other legal theory. Apollon Decl., Exh. B. Plaintiff's claims arise directly from this employment and are based on alleged state and federal statutory violations. Accordingly, the claim falls squarely within the scope of the Arbitration Agreement.

## III. STANDARD OF REVIEW

The Arbitration Agreement expressly provides that "[a]ny arbitration hereunder shall be governed by the Federal Arbitration Act…." Apollon Decl., Exh. B. "The FAA governs arbitration agreements in any contract affecting interstate commerce." *Bernard v. Amazon.com, Inc.*, No. C25-2037JLR, 2026 WL 1674919, at *3 (W.D. Wash. June 10, 2026) (Robart, J.). That standard is readily satisfied here: the Arbitration Agreement is part of Plaintiff's employment relationship with Domino's, an enterprise formed under the State of Michigan that conducts business in all 50 states.

The FAA makes written arbitration agreements enforceable and requires courts to compel arbitration of the claims the parties agreed to arbitrate, in accordance with the agreement's terms. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 S. Ct. 1740 (2011). "Under the FAA, arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract[,]' such as



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908

fraud, duress, or unconscionability." *Bernard*, 2026 WL 1674919, at *3 (citing 9 U.S.C. § 2).. The Act reflects a federal policy favoring arbitration, but that policy does not place a thumb on the scale in favor of arbitration for its own sake. *See Morgan v. Sundance, Inc.*, 596 U.S. 411, 142 S. Ct. 1708 (2022). As the Supreme Court has explained, the FAA's "policy favoring arbitration does not authorize federal courts to invent special, arbitration-preferring procedural rules;" rather, it "is merely an acknowledgment of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." *Id.* at 418 (internal quotation marks omitted). The policy thus makes arbitration agreements "as enforceable as other contracts, but not more so." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12, 87 S. Ct. 1801 (1967). "[A] court must hold a party to its arbitration contract just as the court would to any other kind." *Morgan*, 596 U.S. at 418. Where the parties have agreed to arbitrate, the scope of that agreement is determined by ordinary principles of contract interpretation, giving effect to the parties' intent. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S. Ct. 927 (1983).

A district court may compel arbitration pursuant to § 4 of the FAA. 9 U.S.C. § 4. "The FAA limits federal court review of arbitration agreements to two gateway arbitrability issues: '(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023).

## IV. <u>ARGUMENT & AUTHORITY</u>

### A. The Arbitration Agreement is Valid and Enforceable

"The party seeking to compel arbitration bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Briggs v. Serv. Corp Int'l*, C22-1646JLR, 2023 WL 2075958, at *4 (W.D. Wash. Feb. 17, 2023) (cleaned up; quoting *Norcia v. Samsung Telecomm. Am.*, 845 F.3d 1279, 1283 (9th Cir. 2017)). "This burden is substantial,



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908

and the court must give the party denying the existence of an agreement to arbitrate the benefit of all reasonable doubts and inferences." *Id.* Before a federal court may apply state-law principles to determine the validity of an arbitration agreement, it must determine which state's laws to apply. It makes this determination using the choice-of-law rules of the forum state…." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 994 (9th Cir. 2010)

**1. Michigan Law controls questions of formation.**

The Arbitration Agreement states that arbitration will be governed by the FAA, "provided however, that if the FAA does not apply, arbitration shall be governed by the arbitration law of the State of Michigan, subject to the terms of this Arbitration Agreement." Apollon Decl., Exh. B. "Federal courts sitting in diversity apply the substantive laws of the forum state…." *Bennett v. T-Mobile USA, Inc.*, 2:22-CV-01805-LK, 2024 WL 229580, at *6 (W.D. Wash. Jan. 22, 2024); *see* Doc. 1 (relying on CAFA and diversity jurisdiction for removal). "Washington's choice of law rules require this Court to assess: (1) whether there is an actual conflict of laws between the two proposed states, and if so, (2) whether the choice of law provision in the relevant agreement is effective. Washington courts will enforce a choice of law provision unless a three-part test is satisfied: (1) 'without the provision, Washington law would apply' under section 188 of the Restatement (Second) of Conflicts of Laws; (2) 'the chosen state's law violates a fundamental public policy of Washington'; and (3) 'Washington's interest in the determination of the issue materially outweighs the chosen state's interest.'" *Bennett*, 2024 WL 229580, at *6 (internal citations omitted)

"Under Washington law, the parties must objectively manifest their mutual assent to sufficiently definite terms, and the contract must be supported by consideration." *Id.* (citing *Keystone Land & Dev. Co. v. Xerox Corp.*, 94 P.3d 945, 949 (Wash. 2004)). Whereas "[u]nder Michigan law, '[a] valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation.'" *Id.* (finding no actual conflict between Michigan and Washington law regarding



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908

the formation of a contract).” *Id.* (citing *AFT Mich. v. State of Michigan*, 866 N.W.2d 782, 804 (Mich. 2015)). Therefore, there is no actual conflict between Michigan and Washington law regarding the formation of a contract.

**2. The Arbitration Agreement is valid and enforceable.**

The Arbitration Agreement is valid under Michigan law. There is no real dispute that Plaintiff and Domino’s were competent to contract or that arbitration is a proper subject matter. The parties demonstrated mutuality of agreement because it was signed, by hand, by both Plaintiff and Andrew Ueeck, a Vice President of Human Resources for Domino’s. Apollon Decl., Exh. B; Apollon Decl. at ¶¶ 7, 9. Immediately above these signatures was the following language:

> **MY SIGNATURE ATTESTS TO THE FACT THAT I HAVE READ, UNDERSTAND, AND AGREE TO BE LEGALLY BOUND TO ALL OF THE ABOVE TERMS. I UNDERSTAND THAT, UNLESS I TIMELY SEND THE OPT-OUT EMAIL OR LETTER REFERENCED ABOVE TO THE PROPER ADDRESSEE, I WILL BE REQUIRED TO ARBITRATE ALL DISPUTES WITH THE COMPANY THAT ARE COVERED BY THIS ARBITRATION AGREEMENT.**

Apollon Decl., Exh. B at 3. Plaintiff’s signature objectively manifested his assent to the Agreement, including its requirement that covered claims be arbitrated unless he timely opted out. Plaintiff did not exercise that opt-out right. *Id.* at ¶ 11. The parties thus mutually assented to its terms.

The Agreement was also supported by legal consideration and mutual obligation. “To have consideration there must be a bargained-for exchange; [t]here must be a benefit on one side, or a detriment suffered, or service done on the other.” *Innovation Ventures v. Liquid Mfg.*, 499 Mich. 491, 508, 885 N.W.2d 861, 871 (2016). “In Michigan, continued employment is sufficient consideration to validate a contract in an at-will employment setting.” *Solomon v. CARite Corp. LLC*, 837 F. App'x 355, 362 (6th Cir. 2020). The Arbitration Agreement was signed on November 20, 2025, the same day Plaintiff started work for Domino’s. *Id.*; Apollon



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908

Decl. at ¶ 7. Plaintiff worked for Domino's until March 13, 2026. Doc. 1-1 at ¶ 3.2 (Class Action Complaint). Therefore, there was sufficient consideration.

The Arbitration Agreement is mutually binding. It states that "**both the Company and Employee agree** that any claim, dispute, and/or controversy that **Employee or the Company may have against the other** shall be submitted to and determined exclusively by mandatory, neutral, binding arbitration…"). Apollon Decl., Exh. B. (emphasis added). That is, Domino's is equally required to bring covered claims it may have against Plaintiff in arbitration. Because "the agreement precludes defendants from suing plaintiff in court as much as it precludes plaintiff from suing defendants in court [and] the arbitration agreement explicitly prohibits defendants from unilaterally altering the terms of the agreement" there is mutual agreement and mutual obligation. *Tariq v. Tenet Healthcare Corp*., 356904, 2022 WL 880629, at *5 (Mich. Ct. App. Mar. 24, 2022). This is true even if the arbitration agreement was essentially a "take it or leave it" deal. *Id*.; *see Tinsley v. Yatooma*, 333 Mich. App. 257, 264, 964 N.W.2d 45, 49 (2020) (a "plaintiff's failure to read or understand the agreement is no defense"); *Watts v. Polaczyk*, 242 Mich. App. 600, 604, 619 N.W.2d 714 (2000) ("Michigan law presumes that one who signs a written agreement knows the nature of the instrument so executed and understands its contents"). Plaintiff executed a valid agreement to arbitrate his claims against Domino's.

**B. The Arbitration Agreement contains a delegation clause.**

While questions regarding contract formation and interpretation generally involve state law, the question of whether the parties "clearly and unmistakably" agreed to delegate arbitrability is controlled by federal law. *Sandler v. Modernizing Med., Inc*., 170 F.4th 1209, 1213 (9th Cir. 2026); *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 847 (6th Cir. 2020). If an agreement contains a delegation provision, the court's role is limited to analyzing whether: (1) a valid agreement to arbitrate exists and (2) the agreement contains a valid delegation provision." *Woytko v. Fabfitfun, Inc*., No. C25-2616JLR, 2026 WL 1291912, at *3



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908

(W.D. Wash. May 11, 2026) (Robart, J.). "A delegation clause is a clause within an arbitration provision that delegates to the arbitrator gateway questions of arbitrability, such as whether the agreement covers a particular controversy or whether the arbitration provision is enforceable at all." *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022). It is "effectively a second arbitration agreement in which the parties agree to arbitrate threshold issues concerning the interpretation or scope of a primary arbitration agreement." *Olson v. FCA US, LLC*, 176 F.4th 612, 617 (9th Cir. 2026). Where "the parties have 'clearly and unmistakably' delegated questions regarding arbitrability to the arbitrator, the court need not conduct further inquiries beyond the existence of the arbitration agreement." *Bernard*, 2026 WL 1674919, at *3 (quoting *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1194 (9th Cir. 2024)).

Here, the Arbitration Agreement provides the duty to arbitrate "also specifically includes any claim, dispute, and/or controversy relating to the scope, validity, existence, or enforceability of this Arbitration Agreement." Apollon Decl., Ex. B. The parties have clearly and unmistakably agreed that disputes regarding arbitrability, including scope and enforceability, fall within the Agreement and must be arbitrated. Even if that were insufficient, the parties agreed the arbitration would be initiated and conducted by the AAA. *Id*. Because the AAA arbitration rules provide that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the ... validity of the arbitration agreement," incorporation of the AAA rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). The Arbitration Agreement contains a valid and enforceable delegation clause and thus any disputes regarding arbitrability must be decided by the arbitrator.

**C. Alternatively, the Arbitration Agreement Squarely Encompasses Plaintiff's Claims.**

Even were the Court to find the delegation clause is unenforceable, arbitration is still appropriate because the Plaintiff's claims fall within the scope of the Agreement. *See* Apollon Decl., Ex. B. at 2 (containing a severability clause). Here, Plaintiff agreed to arbitrate claims



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908

that "may arise out of or relate to the employment, context." *Id.* at 1. Specifically, Plaintiff's Arbitration Agreement covers "any claims related to wages, reimbursements, discrimination, and harassment, whether based on state law, Title VII of the Civil Rights Act of 1964, as amended, as well as all other federal, state or local laws or regulations." *Id.*

Such language is exceptionally broad and encompasses any claim that logically or causally connects to an agreement. *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018) (holding a forum-selection clause that covers disputes "related to" a contract "applies to any dispute that has some logical or causal connection to the parties' agreement[,]" but "need not grow out of the contract or require interpretation of the contract in order to relate to the contract"). "To determine whether a dispute falls within a contractual provision, the court 'must examine the factual allegations raised to determine' which claims are covered. The factual allegations in a claim must 'at least touch matters covered by the contract' to be 'related to' a contract." *Olympic View Water & Sewer Dist. v. Edmonds School Dist.No. 15*, C25-1409-KKE, 2026 WL 2568555, at *3 (W.D. Wash. Aug. 31, 2026). "And where a defendant could have engaged in the same conduct without a contractual or employment relationship to the plaintiff, and the plaintiff could have brought the same claims against the defendant in the absence of that relationship, then a plaintiff's claims do not 'relate to' its contractual or employment relationship with defendant." *Id.* (citing *United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791, 799 (9th Cir. 2017)).

Here, Plaintiff alleges Domino's violated its meal and rest break duties, failed to pay minimum and overtime wages and failed to accrue or allow use of sick leave. Doc. 1-1 at ¶ 1.1. Each of these arose out of Plaintiff's employment relationship with Domino's. Put another way, Plaintiff cannot maintain any of these claims without establishing Domino's is his employer. As such, each of these claims "arises out of or relates to" the Arbitration Agreement, which expressly encompasses statutory claims arising out of Plaintiff's employment.



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908

**D. Plaintiff agreed to individual arbitration**

The Arbitration Agreement mandates that the parties agree to binding arbitration on an individual basis only and that covered claims include "any claim brought on an individual, class action, collective action." Apollon Decl., Exh. B. Both Plaintiff and Domino's agreed "[t]o the fullest extent permitted by law, [that they each] expressly waive any right to arbitrate as a class representative, as a class member, in a collective action, or in or pursuant to a private attorney general capacity, and there shall be no joinder or consolidation of parties." *Id*. at 2–3.

This class-action waiver is valid under the FAA, which governs the Arbitration Agreement. Apollon Decl., Exh. B. The FAA preempts any state unconscionability law pertaining to class action waivers in arbitration. *Coneff v. AT & T Corp*., 673 F.3d 1155, 1161 (9th Cir. 2012) (holding FAA preempts Washington state law invalidating class-action waivers as substantively unconscionable); *see Concepcion*, 563 U.S. at 352 (a state-law rule refusing to enforce class-arbitration waivers "stands as an obstacle to the accomplishment" of the FAA's objectives and is therefore preempted). As recently as last week, courts in this District have reiterated that an arbitration clause is not unconscionable because it contains a class action waiver. *See G.P. v. Hernandez Arevalo*, C26-284-KKE, 2026 WL 2640666, at *4 (W.D. Wash. Sept. 8, 2026). Accordingly, because Plaintiff's claim falls within the scope of the Arbitration Agreement, and it requires covered claims to be arbitrated while expressly prohibiting class or collective arbitration, Plaintiff must be compelled to arbitrate his claims on an individual basis.

**E. This Court Should Stay Judicial Proceedings Pending Resolution of the Arbitration.**

The FAA mandates a stay pending arbitration. 9 U.S.C. § 3; *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 832 (9th Cir. 2019) (Under the FAA, a district court "must stay proceedings for claims and issues 'referable to arbitration' pending resolution of the arbitration"). Domino's respectfully requests the Court stay these proceedings while Plaintiff's individual claim proceeds in arbitration.



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908

## V. CONCLUSION

Plaintiff signed a binding agreement to arbitrate his employment claims with Domino's, including those in his Class Action Complaint. Under the terms of the Arbitration Agreement, the Court should compel him to arbitration on an individual basis and to stay judicial proceedings pending the outcome of the parties' arbitration.

DATED this 25th day of September 2026.

FISHER PHILLIPS LLP

By *s/ Clarence M. Belnavis*
Clarence M. Belnavis, WSBA #36681
Isabell Brooks, WSBA #60068

1700 Seventh Avenue, Suite 2200
Seattle, WA 98101
Phone: (206) 682-2308
Email: cbelnavis@fisherphillips.com

*Attorneys for Defendant Domino's Pizza LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies under the laws of the United States that on the date written below, I caused a true and correct copy of the foregoing document to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Adarsh N. Parthasarathy, WSBA #62319
Danielle E. Kim, WSBA #54154
Cassandra Lenning, WSBA #54336
Bibiyan Law Group, P.C.
701 Fifth Ave., 42nd Floor
Seattle, WA 98104
Telephone: (310) 601-5737
aparthasarathy@tomorrowlaw.com
dkim@tomorrowlaw.com
clenning@tomorrowlaw.com

*Attorneys for Plaintiff*

DATED this 25th day of September, 2026 at Seattle, Washington.

*s/ Lynn Van Eyck*
Lynn Van Eyck, Legal Secretary