THE HONORABLE JAMES L. ROBART

**UNITED STATES DISTRICT COURT**
**IN AND FOR THE WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| SANTREL MCCLUSKY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DOMINO'S PIZZA LLC, a Michigan limited liability company conducting business in the State of Washington, and DOES 1 through 100, inclusive,<br><br>Defendants. | No. 2:26-cv-03189<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** |

## I. INTRODUCTION

The legal cliché of the "second bite at the apple" is one that the Court is surely familiar with. This case, however, is something far rarer: a *third* bite at the apple. Defendant's second bite was its motion to compel arbitration in *McClusky v. Domino's Pizza LLC*, Case No. 26-2-23364-1 KNT, an earlier-filed lawsuit between the exact same parties, and involving the exact same purported arbitration agreement, which is currently pending before King County Superior Court Judge David Whedbee. Defendant's first bite came four years ago in *Oakley v. Domino's Pizza, LLC*, 23 Wn. App. 2d 218 (Div. I, 2022), a decision from the Washington Court of Appeals that deals with not only the same arbitration clause (which the court found unconscionable and unenforceable as a matter of state law), but another transportation worker at the same Kent,



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

Washington Supply Chain Center where Mr. McClusky worked as a Yard Driver. Yet, in moving to compel arbitration in this matter, Defendant boldly claims the Federal Arbitration Act (FAA) governs the arbitration agreement at issue, while notably failing to even mention the FAA's transportation worker exemption, the adverse *Oakley* precedent, or its fully briefed Motion to Compel Arbitration pending before Judge Whedbee. This is gamesmanship at its peak, evoking the oft-quoted jibe about insanity, as Defendant repeatedly returns to court to litigate the exact same arbitration clause under substantially similar facts, each time hoping for a contrary result. Even more indicative of Defendant's forum-shopping strategy, it now includes new and different arguments it omitted in its state court briefing from two months ago (although, like it did in state court, Defendant still omits any mention of *Oakley*), including now arguing that Michigan law applies to the interpretation of the purported agreement and that there is an enforceable delegation clause.

Defendant is playing hide the ball, transparently attempting to set up a potential conflict between a state court and federal court decision on the interpretation of the same arbitration agreement while raising new arguments for the first time that it could have, and should have, raised in state court. The Court should not take up Defendant's invitation to second-guess the state courts' interpretation of this agreement. Instead, the Court should stay this proceeding under the *Colorado River* doctrine pending resolution of Defendant's Motion to Compel Arbitration in the earlier-filed state court action, which has already been pending for over a month.[1] It is not in the interest of judicial economy for this proceeding to continue at this time.

If the Court is inclined to consider Defendant's motion on the merits, however, the Court

---

[1] Defendant incorrectly noticed their August 27, 2026 Motion to Compel Arbitration before Judge Haydee Vargas, instead of Judge Whedbee, so they re-noted the hearing for November 5, 2026.



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

should deny Defendant's motion in full. Four years ago, the Washington Court of Appeals analyzed the same arbitration agreement at issue here in *Oakley v. Domino's Pizza LLC*, where Defendant attempted to compel arbitration in a wage and hour class action brought by a Delivery and Service driver employed at the same Supply Chain Center where Plaintiff worked. *See infra*, at pp. 16-22. The Division I panel held the FAA's transportation worker exemption to applied to Oakley, Washington State law (not the FAA) governed the arbitration agreement, and the agreement—which prohibits class actions—was unenforceable because "it frustrates our state's public policy of protecting workers' rights to undertake collective actions and ensure the proper payment of wages." 23 Wn. App. 2d 218, 235 (Div. I, 2022). The same result is compelled here. As with the plaintiff in *Oakley*, Santrel McClusky is a transportation worker exempt from the application of the FAA because, as a Yard Driver, he was involved in "an intrastate portion of an interstate … business" that is "immediately connected with interstate commerce." *Norfolk & Western R. Co. v. Pennsylvania*, 136 U.S. 114, 119-20 (1890) (quoted approvingly by *Flowers Foods, Inc. v. Brock*, 608 U.S. 380, 387-88 (2026) for the same proposition). Although *Oakley* was decided before *Flowers Foods*, it may as well have been prophetic, as both cases counsel the same result here. Further, the Court should defer to Division I's interpretation of state law in *Oakley* finding the arbitration agreement at issue is unconscionable under Washington State law.

Plaintiff respectfully requests this Court stay any further briefing related to this motion under *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), or deny Defendant's motion for the reasons that follow.

## II. STATEMENT OF FACTS

### A. Factual Background

Defendant hired Santrel McClusky as a "Yard Driver" on October 24, 2025. In Plaintiff's



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

offer letter, Defendant defined McClusky's "Support Area" as "Transportation," reporting to the "Manager, Transportation" for Defendant's "Supply Chain Center." Lenning Declaration ("Lenning Decl."), Exhibit 1. Defendant identifies the responsibilities of Yard Drivers to include moving "Defendant's trailers to the loading dock … while Defendant's Warehouse Associates load the [outbound] product," and, once loading is complete, "mov[ing] the loaded trailer to another area of the yard, where a separate delivery driver takes it for outbound delivery." Dkt. 13, ¶ 6. *See also* McClusky Declaration ("McClusky Decl."), ¶¶ 22-24. Additionally, Yard Drivers take trailers to be washed and cleaned, and communicate maintenance needs of the trucks used in delivering Defendant's product. Dkt. 13, ¶ 8; McClusky Decl., ¶ 26.

McClusky's Yard Driver position was subject to the Federal Motor Carrier Safety Administration ("FMCSA") regulations. Lenning Decl., Ex. 22. Among the many documents Defendant required McClusky to electronically acknowledge during his November 20, 2025, onboarding were:

- General Consent for Limited Queries of the FMCSA Drug and Alcohol Clearinghouse;
- Supply Chain Services D&S Driver Safety Bonus Program Guidelines (applying to "full time, active team members whose primary role is driving," listing "Yard Drivers" specifically);
- Transportation Safety Policy – Supply Chain Services (United States) (applying to "all drivers or other team members operating Company vehicles … in Domino's Supply Chain Centers"); and
- Driver Operation Protocol (DrOP) Manual: Handbook for Truck.

Lenning Decl., Exs. 2-5. These documents all appear to be specific to transportation workers. As



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

part of his role, McClusky was also required to sign a consent form for Defendant to obtain his Safety Performance History pursuant to FMCSA regulations requiring "motor carrier[s]" to make investigations and inquiries "with respect to each driver it employs." *Id.* at Ex. 22; 49 C.F.R. § 391.23.

Following his termination, Defendant furnished McClusky with a copy of his personnel file pursuant to RCW 49.12.250, which requires inclusion of "[a]ll employment agreements" between Defendant and McClusky. RCW 49.12.240(2)(f). The file included around 300 pages of dense policy documents, handbooks, manuals, and other forms McClusky was required to rush through and sign on his first day of employment without any opportunity to review them.[2] McClusky Decl., ¶¶ 6-21. Each of the documents were purportedly signed electronically. *See, e.g.,* Lenning Decl., Ex. 2 at p. 6[3] (signature page purporting to identify the date and time of the e-Signature for that document. Many of the documents contain similar pages, purporting to identify the date and time of the e-Signature for the respective document). But notably some do not contain any date or timestamp for the e-signature. *See* Lenning Decl., ¶¶ 23-26 & Exs. 15-18.

Defendant did not provide McClusky with any reasonable opportunity to review the documents he was required to sign. Rather, Defendant, through their employee, James Kemp, a "Customer Service/Operations Admin Manager" at "Domino's Supply Chain Center," required McClusky to sign these documents amidst a rush-order to review over 12-hours of video training in less than 8 hours. McClusky Decl., ¶¶ 7-10, 20, 21. McClusky electronically signed 14 of the 18 (comprising all of the electronically-signed documents possessing date and timestamps) in

---

[2] These documents are attached as Exhibits 2 through 18 and Ex. 23 to the Lenning Decl.

[3] For simplicity, all pincites to the Lenning Declaration refer to the page number of the PDF document itself. Counsel hopes this makes the lengthy document easier to navigate.



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

less than an hour between 12:36 PM and 1:23 PM on November 20. Lenning Decl., at ¶32. Defendant pressured McClusky to review and sign documents during his lunch break. Lenning Decl., Ex. 14, at p. 138; McClusky Decl., ¶21. Four of the electronically-signed documents have no date or timestamp at all. Lenning Decl., Exs. 15-18. The only document from McClusky's onboarding that bears a physical signature is the purported arbitration agreement Defendant attempts to enforce here, which bares the same November 20th signature date. Dkt. 12, Ex. B. McClusky has no memory of the arbitration agreement or cover letter contained at Dkt. 12, Exhibits A and B, and is confident he was not given any meaningful opportunity to review those documents. McClusky Decl., ¶¶ 12-17.

**B. Procedural History.**

On July 21, 2026, Plaintiff filed a class action lawsuit against Domino's Pizza LLC ("Defendant") in King County Superior Court, alleging widespread violations of Washington's Noncompete Law on behalf of himself and a putative class. Lenning Decl., at ¶ 33. On July 31, 2026, Plaintiff filed a separate class action lawsuit in that same court alleging widespread violations of Washington's wage and hour laws on behalf of himself and a narrower putative class. *See* Dkt. 1-1, at pp. 1-2.[4] The Noncompete class case remains in state court, pending before Judge Whedbee. Defendant removed only the instant wage and hour class action.

On August 20, 2026, counsel for the parties met to discuss Defendant's stated intention of moving to compel arbitration. Lenning Decl., at ¶¶ 3-5. Counsel for Plaintiff asserted that Mr. McClusky was an FAA-exempt transportation worker, the Washington appellate decision in *Oakley v. Domino's* directly applies to this dispute, and under *Oakley*, the purported agreement

[4] Because the definition of a covered worker under Washington's Noncompete Law is broader than the putative class covered by the allegations in Plaintiff's wage and hour suit, it was necessary to file two separate lawsuits, although Plaintiff is a member of both the Noncompete and wage and hour classes.



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

and class action waiver is unconscionable under state law. *Id.* On August 27, 2026, Defendant moved to compel arbitration in the Noncompete action, and nowhere in its Motion did Defendant mention *Oakley*. Lenning Decl., at Ex. 24. After Plaintiff called Defendant's omission out in his Opposition, Defendant devoted most of their Reply brief to trying to distinguish *Oakley*. *Id.* at Ex. 28. Plaintiff expects Defendant will take the same tactic here. Although the Court need not wade into the issue, since it was fully briefed before the state court, and the parties are awaiting a decision as of the filing of this brief.

Seven days after moving to compel arbitration in the Noncompete action, Defendant removed this wage and hour class action to federal court. Dkt. 1. Three weeks later, after Defendant's Motion to Compel Arbitration in the Noncompete matter had been fully briefed in state court, Defendant asked Plaintiff to consent to arbitration in this case. When Plaintiff refused for the same reasons detailed in their Opposition brief, Defendant then filed the instant motion.

## III. ARGUMENT AND AUTHORITY

### A. This Proceeding Should Be Stayed Under the *Colorado River* Doctrine.

This litigation should be stayed given the existence of parallel litigation in state court where this exact arbitration agreement between the parties has been fully briefed. District courts may dismiss or stay "a federal suit due to the presence of a concurrent state proceeding" in the interest of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 812 (1976). The Ninth Circuit has formulated eight factors to be considered when weighing whether a *Colorado River* stay is appropriate, including:

> … (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

> provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.[5]

*R.R. St. & Co. v. Transp. Ins. Co.*, 656 F.3d 966, 978-79 (9th Cir. 2011). These factors are not a "mechanical checklist." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983). The factors are applied "in a pragmatic, flexible manner with a view to the realities of the case at hand." *Id.* at 21. Thus, "[t]he weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." *Id.* at 16. "Some factors may not apply in some cases," *Montanore Minerals Corp. v. Bakie*, 867 F.3d 1160, 1166 (9th Cir. 2017), and "in some cases, a single factor may decide whether a stay is permissible," *United States v. State Water Resources Control Bd.*, 988 F.3d 1194, 1203 (9th Cir. 2021) (citing *Intel Corp v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993); *Moses H. Cone*, 460 U.S. at 19 ("[T]he consideration that was paramount in *Colorado River* itself [was] the danger of piecemeal litigation.")).

Here, the majority of the applicable factors favor a stay, specifically: (1) the desire to avoid piecemeal litigation; (2) the order in which the forums obtained jurisdiction; (3) whether the state court proceedings can adequately protect the rights of the federal litigants; (4) the desire to avoid forum shopping; and (5) whether the state court proceedings will resolve all issues before the federal court.

---

[5] The first two factors "are irrelevant in this case because the dispute does not involve a specific piece of property, and both the federal and state forums are located in" Seattle. *R.R. St.*, 656 F.3d 979..



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

***1. This proceeding should be stayed to avoid piecemeal litigation.***

A stay of the instant proceedings avoids piecemeal litigation with the potential for conflicting state and federal court rulings on the same issue. Defendant created this potential conflict by strategically removing only one of the two lawsuits between the parties, and then waiting until after briefing had been completed on Defendant's parallel state court Motion to Compel Arbitration to then file the instant motion in federal court, arguing legal theories it could have, but did not, argue in state court. Defendant plainly seeks another bite at the apple, setting up a potential conflict between the ultimate determination by both the state court and this Court as to the same arbitration agreement between the parties and the potential bases of those decisions.

Despite Defendant's gamesmanship in crafting new and different arguments in its briefing before the King County Superior Court and its briefing in this Case, Defendant's dual motions to compel arbitration on the same purported agreement between the parties is the definition of "piecemeal litigation." *See Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988) ("Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results."). A stay is favored where the case "raise[s] a special concern about piecemeal litigation, which can be remedied by staying or dismissing the federal proceeding," which "the court could [not] have avoided by other means." *R.R. St.*, 656 F.3d at 979 (cleaned up). Here, the present motion and the parallel state court briefing concern the exact same parties and arbitration clause. *Compare* Dkt. 14, at Ex. B *to* Lenning Decl., at Ex. 26, pp. 377-79. If this Court were to reach the merits of Defendant's motion, it would have to determine whether Plaintiff is an FAA-exempt transportation worker, and if so, what state law applies to the purported agreement, and whether



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

the arbitration agreement and class action waiver is enforceable under that state's laws – all issues which are currently pending before King County Superior Court Judge Whedbee. *See* Lenning Decl., at Exs. 24, 27, 28. That Defendant raises new arguments in its Motion here does not save it, as Defendant could have easily raised such arguments in state court, but chose not to do so. It must live with that decision.

The wisdom of *Am. Int'l Underwriters* is made clear by *any* hypothetical where this Court and the state court disagree on the validity and enforceability of the purported arbitration agreement. For instance, if Defendant loses its Motion to Compel in both forums, the Federal Arbitration Act entitles Defendant to an immediate appeal in both state and federal court, extending the parallel litigation further. 9 U.S.C. §16(a). Worse yet, if the state court denies Defendant's motion to compel arbitration, but this Court were to grant Defendant's motion on the same issue, a state and federal court will have reached directly contrary conclusions on the exact same agreement, parties, facts, and issues of law. If the courts went the opposite way, and the state court action were forced into arbitration while this action proceeds to litigation, the results are equally absurd—the state court, after all, would not be bound by this court's decision, nor by a decision from the Ninth Circuit Court of Appeals, even on issues of federal law. *See S.S. v. Alexander*, 143 Wash. App. 75, 92, 177 P.3d 724, 733 (2008) ("When a Federal statute is construed by a United States court of appeals, such construction . . . is not binding on us if we do not deem it logical or sound.") (cleaned up). This is not "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colo. River*, 424 U.S. at 812.

***2. The order in which the forums obtained jurisdiction, and whether the litigants' rights can be adequate protected in state court, both counsel in favor of a stay.***



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

"Here, the state court was the first to exercise jurisdiction over the subject matter" of Defendant's motion, "an important consideration in this case." *R.R. St.*, 656 F.3d at 980. The parties have fully briefed the enforceability of the purported arbitration agreement at issue before the King County Superior Court, and Defendant's motion to compel arbitration has been pending in the Noncompete matter for more than a month. Not only is the briefing and an ultimate decision on Defendant's parallel motion further along in state court, but there is no reason to believe Defendant's rights are not being adequately protected in the state court proceeding where Defendant availed itself of the opportunity to fully brief the enforceability of this exact arbitration agreement between the parties.

Nor is there any reason to find King County Superior Court Judge Whedbee is unable to fairly adjudicate the arbitration agreement's enforceability. Although the threshold issue is whether Plaintiff is exempt from the Federal Arbitration Act, it is not axiomatic that state courts are any less capable of deciding issues of federal law than federal courts. For instance, the Supreme Court has held state courts capable of adjudicating (and a federal court's abstention from a parallel proceeding) appropriate in a suit between two sovereigns concerning federal water rights. *See Ariz. V. San Carlos Apache Tribe*, 463 U.S. 545, 570 (1983). There is nothing remarkable about this case that would dictate a different conclusion here. Thus, both of these factors also counsel in favor of a stay.

***3. Defendant engaging in forum shopping also counsels in favor of a partial stay.***

In *State Water Res.*, the Ninth Circuit addressed district court concerns with not allowing partial stays, specifically that district courts "did not want to encourage plaintiffs to add [new federal] claims solely for the purpose of securing a separate federal forum and avoiding consolidation with previously filed state court actions." 988 F.3d at 1206 (internal quotations and



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

citation omitted). The Ninth Circuit responded:

> Our precedent takes this potential for gamesmanship into account. Indeed, the seventh factor in our *Colorado River* test is the desire to avoid forum shopping. In the *Colorado River* context, [we have] held that forum shopping weighs in favor of a stay when the party opposing the stay seeks to avoid adverse rulings made by the state court or to gain a tactical advantage from the application of federal court rules.

*Id.* (cleaned up).

Facing a potentially adverse ruling on its Motion to Compel Arbitration in state court, Defendant took advantage of the removal statute to get another bite at the apple in briefing this issue, thereby setting up a potential conflict between state and federal court on the exact same issues of fact and law (the validity of the purported arbitration agreement hardly turns on the specific claims in the suit). Defendant's lack of candor in its instant Motion to Compel Arbitration is also appropriate to consider: Defendant did not alert the Court to the parallel state proceeding which shares identical parties, purported arbitration agreement, and issues of fact and law. Nor did Defendant address persuasive adverse authority from a Washington State appellate court (*Oakley*), or even mention the FAA's transportation worker exemption, the key issue on which the state court briefing turns. *Cf. State Water Res.*, 988 F.3d at 1207 (finding the United States, as the plaintiff in the action, did not engage in forum shopping when it filed both the state and federal case on the same day, informed both courts of the other suit, and informed the state court of its "preferred choice of a federal forum to resolve its claims."). The United States did not play "hide the pickle" in *State Water Res.*, but Defendant surely did here. This, along with



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

the other factors present here, again counsels in favor of a stay.

***4. The state court proceeding will resolve all issues currently before this Court.***

Since the same issues regarding the validity and enforceability of the purported arbitration agreement are central to both the state court briefing and the instant briefing, the state court proceeding will *necessarily* resolve all issues currently before this Court. *Colorado River* suggests this Court should stay proceedings until resolution of Defendant's earlier-filed motion to compel arbitration, which is fully briefed and currently pending in state court. Despite Defendant's deliberate choice to raise different arguments in support of its motion before this Court, each of Defendant's arguments will be reached by the state court irrespective of whether it ends up ruling for or against Defendant. This is because the threshold issue is whether Plaintiff is exempt under Section 1 of the Federal Arbitration Act. If Plaintiff is not exempt, then the other arguments Defendant raises are moot. If Plaintiff is exempt, then (as explained below) Washington state law controls and would hold the entire arbitration clause unconscionable and unenforceable because the class-action waiver is contrary to state policy.

Before this Court, Defendant raises two arguments for the first time. First, Defendant asserts that Michigan law controls questions of formation if the FAA does not apply. In doing so, Defendant brazenly claims "there is no actual conflict between Michigan and Washington law regarding the formation of a contract." Dkt. 12, at p. 7. That claim, without mentioning *Oakley* is deliberately misleading, as the conflict between Michigan and Washington law is not one of formation, but of unconscionability. *See Oakley*, 23 Wn. App. 2d at 232-233 (concluding arbitration agreement was controlled by Washington law, because "[a]lthough Domino's is a Michigan company . . . Oakley is a Washington resident, Domino's does business in Washington, and Oakley's employment with Domino's was based in Washington," such that



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

"there was no dispute that Washington is the state with the most significant relationship to the contract."); *id.* at 235 (invalidating arbitration provision under Washington law because "the class action waiver therefore frustrates our state's public policy of protecting workers' rights to undertake collective actions").

Defendant sidesteps the choice-of-law analysis by not engaging with Section 1 of the FAA at all. Even if the state court concluded that Plaintiff falls outside the transportation worker exemption to the FAA, however, it would still be necessary to decide under what state law Plaintiff's traditional contract defenses are to be evaluated under. Thus, in answering the threshold question of Section 1's applicability to Plaintiff, the state court necessarily will resolve the issue of the application of Michigan's law to the purported arbitration agreement even though Defendant chose not to raise the issue in state court.. Defendant may not like the answer: If Plaintiff is found to be an FAA-exempt transportation worker and Washington law applies, enforcement of the choice-of-law provision would frustrate Washington's public policy goals for its employees, thereby operating to invalidate the selection of Michigan law as unconscionable. *See, e.g.*, *Dix v. ICT Group, Inc.*, 160 Wn.2d 826, 834 (Wash. 2007) (a forum selection clause may be found unreasonable and unenforceable if "enforcement would contravene a strong public policy of the State where the action is filed."); *Young v. Ferrellgas, L.P.*, 106 Wn. App. 524, 531-32 (Div. II, 2001) ("'The Legislature has evidenced a strong policy in favor of payment of wages due employees by enacting a comprehensive scheme to ensure payment of wages,' . . . Allowing an employment contract arbitration provision to replace this statutory cause of action would thwart public policy guaranteeing fair wages, codified by our Legislature.") (citation omitted).

The same is true for the second argument Defendant raises for the first time before this



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

Court -- whether the issue of formation is delegated to the arbitrator. If Section 1 of the FAA applies to Plaintiff (i.e., he is found to be an exempt transportation worker), the question is no longer one of formation, but rather one of unconscionability, mooting any formation arguments. Moreover, delegation clauses are unenforceable where Section 1 applies. *New Prime Inc. v. Oliveira*, 586 U.S. 105, 112 (2019). Even if the state court decides Section 1 does not apply, however, it must necessarily decide whether it is within its power to decide issues of formation or whether that issue is delegated to the arbitrator by the terms of the contract. Again, either way, Defendant's newly-briefed arguments for compelling arbitration will still be resolved by the state court.

Thus, the majority of the *Colorado River* factors present in this case all counsel in favor staying further proceedings on Defendant's instant motion pending Judge Whedbee's decision on Defendant's parallel motion to compel arbitration in state court.

**B. If the Court Reaches the Merits of Defendant's Motion, It Should Find McClusky Falls Under the FAA's Transportation Worker Exemption.**

The Federal Arbitration Act forecloses itself from being "used to compel arbitration in disputes involving 'contracts of employment' of any class of workers 'engaged in … interstate commerce.'" *Flowers Foods*, 608 U.S. at 383 (quoting 9 U.S.C. §1). This so-called "transportation worker exemption" applies to a worker so long as their work "play[s] a direct and necessary role in the free flow of goods across borders." *Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246, 256 (2024) (internal quotation marks omitted). In *Bissonnette*, Chief Justice Roberts asked a rhetorical question to elucidate the contours of the transportation worker exemption to the Federal Arbitration Act (FAA): "Does a pizza delivery company derive its revenue mainly from pizza or delivery?" *Id.* at 254. What matters for the purpose of the



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

exemption is not what a company does, but what a worker does for a company—"A transportation worker need not work in the transportation industry to fall within the exemption from the FAA provided by §1 of the Act." *Id.* at 256. Since *Bissonnette*, the Supreme Court has unambiguously held a worker need not cross state lines themselves, or even interact with a vehicle which crosses state lines—"say, by loading or unloading the goods it carries,"—to fall under the ambit of §1. *Flowers Foods*, 608 U.S. at 385. Rather, the pivotal question is whether the role the transportation worker plays is "immediately connected with interstate commerce." *Id.* at 388 (cleaned up).

Application of the FAA's transportation worker exemption to the specific arbitration clause Defendant seeks to enforce here is not an issue of first (or even second) impression in Washington State. Indeed, Defendant lost this same argument as applied to the very arbitration clause at issue here (differing only in the typesetting),[6] and as applied to another transportation worker at the same Supply Chain Center where McClusky was employed. *See Oakley*, 23 Wn. App. at 218 (confronting §1's application concerning a delivery and service driver employed at Domino's Kent supply chain center); *compare* Dkt. 14, Ex. B (arbitration policy at issue here) *with* Lenning Decl., Ex. 19 at pp. 189-91 (arbitration policy at issue in *Oakley*).[7] In holding the exemption applied to Oakley, Division I pointed to the Ninth Circuit's decision in *Rittman v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020), holding "workers employed by Amazon.com to transport packages for the last mile of the shipment, from Amazon warehouses to their

---

[6] The typesetting of an arbitration agreement, while potentially dispositive in other contexts, was not a factor relied on by the *Oakley* court in finding the arbitration agreement unconscionable.

[7] Plaintiff would also draw the Court's attention to the other exhibits attached to the Pizl Declaration filed in *Oakley*. Many of those documents are prior versions of the same transportation-worker-specific policies Defendant required McClusky to sign, as discussed above, *supra*, pp. 4-5. This is yet another similarity between *Oakley* and the instant case.



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

destination, were exempt from the FAA's application … [e]ven though the workers' journeys were generally intrastate" since the packages "remain[ed] in the stream of interstate commerce until they [were] delivered." *Oakley*, 23 Wn. App. 2d at 227-28 (modifications in original). The *Oakley* Court noted that core to the Ninth Circuit's *Rittman*'s analysis was that Amazon packages "did not come to rest at Amazon warehouses, but, instead, the warehouses were simply part of a process by which a delivery provider transfers the packages to a different vehicle for the last mile of the packages' interstate journeys." *Id.* (cleaned up).[8] The *Oakley* Court then observed, as relates to Defendant:

> [T]he supply chain center does not mark the end of interstate transactions and the beginning of separate local transactions, but instead, as the name suggests, it is one stop in a larger supply chain. As the Domino's team member handbook describes it, "each Supply Chain facility *acts as a channel of support* for the stores it services." Therefore, like an Amazon warehouse, the supply chain centers are "simply part of a process" by which Domino's supplies its stores.

*Id.* at 228 (cleaned up).[9]

Defendant remarkably makes no effort to distinguish the *Oakley* decision from the

[8] *Rittmann*'s analysis follows the Supreme Court's ruling in *Flowers Foods*, which recognized §1's potential to cover even workers who do not interact with vehicles that have moved in interstate commerce. *See Flowers Foods*, 608 U.S. at 387 (endorsing a hypothetical where even entirely *intra*state movement of goods can constitute "a direct, active, and necessary part" in *inter*state commerce). The argument McClusky makes here is far less drastic—he interacted with trucks at *both* ends of their journey—that is, both fully loaded outbound, and empty inbound trucks—which either *recently did*, or *imminently would,* move in interstate commerce. Defendant admits as much. Dkt. 13, ¶¶6-7.

[9] Domino's has notably removed this language from its handbook since the litigation in *Oakley*. Yet, the role of its supply chain centers has not changed. *Compare* Lenning Decl., Ex. 20 *with* McClusky Decl., ¶¶ 22-25, Lenning Decl., Ex. 23, and Dkt. 13 *generally*.



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

present case, and neglects to even inform the Court of *Oakley*, despite its persuasive effect and reasoning supported in binding Ninth Circuit case law, and despite Defendant briefing it on Reply in support of its parallel state court motion.

This lack of candor aside, Defendant's own representations before this Court foreclose any argument that McClusky falls outside §1's ambit. The declarations Defendant filed in support of its motion places McClusky squarely within *Oakley*'s analysis and §1. For example, Mikell Young, the Senior Operations Manager overseeing the Kent Supply Chain Center represented that Yard Drivers move trailers loaded with Defendant's product around the yard whereupon a delivery driver takes over for outbound delivery. Dkt. 13, at ¶¶ 4-8. *See also* McClusky Decl., ¶¶ 22-25 (the trucks Plaintiff handled were bound to locations in and outside Washington, including Oregon, Idaho, and Montana). These trucks "routinely deliver[] supplies across state lines," *Oakley*, 23 Wn. App. 2d at 229, and do so without "new or subsequent transactions" serving as a "dividing line between interstate and intrastate commerce." *Rittmann*, 971 F.3d at 916 (citing *A.L.A Schechter Poultry Corp. v. U.S.*, 295 U.S. 495, 542-43 (1935)). *See also* Lenning Decl., Ex. 20, at ¶ 3 (sworn statement from the plaintiff in *Oakley* testifying the Kent Supply Chain Center served Washington, Oregon, Idaho, Montana, and Wyoming); McClusky Decl., ¶ 25 (testifying similarly).

Defendant has already shown its hand in its Reply brief before the state court. It has a single point of protest: to fall under the definition of a transportation worker, as refined in *Flowers Foods*, a worker must "transport[] goods along an intrastate leg of the product's continuous interstate journey," which Defendant claims Mr. McClusky does not meet. Lenning Decl., Ex. 28, at p. 400. Unless Defendant plans to ask this Court to overturn *Rittman*, on which *Oakley* relied, however, that makes no sense. By its own admission, Mr. McClusky was part of a



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

chain—he moved loaded trucks bound for out-of-state destinations, and moved loaded trucks his worksite received for unloading so their cargo could similarly continue its journey to its final destination at local store locations. In other words, the goods did not "come to rest," at Defendant's Kent facility. *Rittman*, 971 F.3d at 916. *Flowers Foods* did not abrogate this principle; to the contrary, the Supreme Court cited it approvingly. *Flowers Foods*, 608 U.S. at 389 (citing *Rittman*, 971 F.3d at 916). Unless Defendant is prepared to demonstrate the role of its Kent Supply Chain Center has fundamentally changed since 2022, *Oakley* serves as substantial persuasive authority, *Rittman* is binding, and McClusky is an FAA-exempt transportation worker.

**C. If the FAA Does Not Apply, the Arbitration Agreement's Class Action Waiver is Unconscionable Under Washington Law, Voiding the Entire Agreement.**

Where an arbitration agreement contains a severability clause, "courts often strike the offending … provisions to preserve the contract's essential term of arbitration." *Zuver v. Airtouch Commc'ns*, 153 Wn.2d 293, 302 (2004). But where the unconscionable provisions "permeate an agreement … such that severance would essentially require [a court] to rewrite the dispute resolution agreement," courts will strike the entire agreement. *McKee v. AT&T Corp.*, 164 Wn.2d 372, 402-03 (Wash. 2008). Following this Washington Supreme Court guidance, the *Oakley* court determined that, while delegation of the FAA was severable from Domino's arbitration agreement, the class action waiver, which it found unconscionable under Washington law, was not. *Oakley*, 23 Wn. App. 2d at 233-35. Even Defendant has recognized *Oakley's* unconscionability holding "reasoning a class action waiver would 'thwart public policy guaranteeing fair wages' and frustrate Washington's policy protecting a collective action to ensure proper wage payment." *See* Lenning Decl., Exhibit 28 at p. 4. Given the arbitration



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

agreement at issue here is identical to the one in *Oakley*, and arises in the same wage and hour class action context, this Court should reach the same result if it takes up the issue.

Defendant argued in its state court briefing that Plaintiff's "public-policy theory" fails under the FAA. Lenning Decl., Ex. 28, at pp. 401.[10] This is wrong on two accounts: first, as previously explained, the FAA does not apply because Plaintiff is an exempt transportation worker. Second, Plaintiff does not put forward a *theory* about Washington State public policy; rather Washington state courts have repeatedly held class action waivers are unconscionable in the context of wage and hour class actions. *See, e.g., Sayaseng v. Geodis Logistics, LLC*, 2025 Wash. App. LEXIS 1936, *11 (Div. I, 2025) ("our state Supreme Court has specifically recognized the value of class actions in the context of alleged wage and hour violations.") (citing *Chaves v. Our Lady of Lourdes Hosp. at Pasco*, 190 Wn.2d 507, 524 (Wash. 2018) (observing that a prohibition on class actions risks discouraging the vindication of worker rights because individual employees may be reluctant to sue their employers). The Washington Supreme Court has recognized "protecting parties in a position of weaker bargaining power from exploitation" is a "fundamental public policy," and "an arbitration agreement may be substantively unconscionable when it is used as a tool of oppression to prevent vindication of small but widespread claims." *McKee*, 164 Wn.2d at 385. Conversely, "when wrongs are small but widespread, class actions are often the only effective way to address them." *Id.* at 397; *see also Scott v. Cingular Wireless*, 160 Wn.2d 843, 854-57 (Wash. 2007) (class action waiver was substantially unconscionable violating state public policy, given the claims were individually

[10] In support, Defendant cites *Walz v. Walmart Inc.*, 2024 U.S. Dist. LEXIS 101094, *21 (W.D. Wash. June 6, 2024) (holding "the unconscionability defense announced in *Oakley* is inapplicable when a contract of employment is subject to the FAA"). But as in *Oakley*, here Plaintiff is "a transportation worker under 9 U.S.C. § 1 and his employment contract was accordingly exempt from the FAA's requirements." *Id.*



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

small, and "attorneys are generally unwilling to take on individual arbitrations to recover trivial amounts of money," which is "precisely why class actions were created in the first place.").

This class action falls squarely in that bucket, implicating the Washington Supreme Court's concern that concentrating the claims in one forum and proceeding as a class action "is likely the only way that the [employees'] rights will be vindicated" because individual employees "likely do not have the bargaining power to achieve systemic victories." *Chaves*, 190 Wn.2d at 524; *see also Young*, 106 Wn. App. at 531-32 (discussing unconscionable class action waiver in the context of Washington's Minimum Wage Act); *Sayaseng*, 2025 Wash. App. LEXIS 1936, *12 (holding class action waiver rendered arbitration agreement unconscionable under Washington law because "plaintiffs seek to vindicate statutory rights that are independent, non-negotiable, and thus cannot be arbitrated.").

Such considerations are relevant to the unconscionability of both the class action waiver and the arbitration agreement as a whole. *See Oakley*, 23 Wn. App. 2d at 234-35 (considering "Oakley would not have been able to pay a lawyer to bring the suit on an individual basis," that it "is not viable from a financial standpoint" for attorneys to handle smaller claims on an individual basis, and "the prohibition on class actions may prevent Domino's employees from seeking restitution … even if they are able to afford a lawyer to represent them individually, because 'individual [employees] may be reluctant to sue their employers.'"). Unsurprisingly, the same factors the *Oakley* court considered are shared in the instant case. For instance, McClusky would not have been able to pay his lawyers to bring this suit on an individual basis—his counsel bills between $600 - $1,050 on hourly matters. Lenning Decl., ¶ 6 (related to fees); McClusky Decl., ¶ 30 (related to unaffordability). It would be financially impractical for Plaintiffs' counsel to take on individual wage and hour litigation unless it could be filed on a class basis given the low



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

economic damages recovery compared to the cost of litigation. Lenning Decl., ¶ 7. Finally, individual actions brought under the Minimum Wage Act invite the potential of individual retaliation. These factors all weigh in favor of finding the class action waiver, and thus the entire arbitration agreement, substantively unconscionable just as the *Oakley* court previous held. 23 Wn. App. 2d at 234-35.

## IV. CONCLUSION

For the foregoing reasons, this Court should stay all further proceedings on the instant motion pending a decision on Defendant's parallel motion to compel arbitration in state court. In the alternative, if the Court reaches the merits of Defendant's motion, it should find Plaintiff is an FAA-exempt transportation worker, and the purported arbitration agreement is unconscionable under Washington State law.

I certify that this memorandum contains 6,632 words, in compliance with the Local Civil Rules.

DATED this 23rd day of October, 2026. **BIBIYAN LAW GROUP, P.C.**

By: */s/ Adarsh N. Parthasarathy*

Adarsh N. Parthasarathy, WSBA No. 62319
Cassandra Lenning, WSBA No. 54336
Danielle E. Kim, WSBA No. 54154
**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043
Fax: (206) 225-2067
*aparthasarathy@tomorrowlaw.com*
*clenning@tomorrowlaw.com*
*dkim@tomorrowlaw.com*

*Attorneys for Plaintiff*