THE HONORABLE JAMES L. ROBART

**UNITED STATES DISTRICT COURT**
**IN AND FOR THE WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| SANTREL MCCLUSKY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DOMINO'S PIZZA LLC, a Michigan limited liability company conducting business in the State of Washington, and DOES 1 through 100, inclusive,<br><br>Defendants. | No. 2:26-cv-03189<br><br>**DECLARATION OF SANTREL MCCLUSKY IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** |

I, Santrel McClusky, declare as follows:

1. I am over the age of 18 and the Plaintiff in this case. If called as a witness, I would and could competently testify to the following facts based on my direct personal knowledge.

2. I am making this declaration in support of my Opposition to Defendant's Motion to Compel Arbitration and Stay Proceedings filed in this case.

3. I was hired by Defendant Domino's Pizza LLC ("Defendant") on October 24, 2025, for the position of "Yard Driver."

4. **Exhibit 1 to the Declaration of Cassandra Lenning** filed in support of my Opposition is a true copy of the offer letter I received when I was hired.

5. My job was listed under the "Transportation" Support Area and I understood myself



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

to be working as a transportation worker for Defendant.

6. I was officially onboarded to my role on November 20, 2025.

7. When I reported to work that day at around 9 AM, Defendant had an employee named James Kemp there to guide us through the onboarding. Mr. Kemp required us to start watching training videos. Although the total length of the videos was over 12 hours, we were required to watch all of the videos before the end of the day. We were told to skip and fast forward through the videos to complete them faster.

8. While we were watching the videos, Mr. Kemp told us that there are documents that we had to electronically sign. He told us to stop watching the videos and that we had to sign them now.

9. I did not have time to scroll through the documents because Mr. Kemp was pressuring us to sign them right now. He said something like, "Just go ahead and sign this real quick and get back to the videos." He then added, "I'm trying to get you guys out of here," as though he was doing us a favor.

10. If Mr. Kemp gave us the opportunity and time to review the documents before signing them, I would have done so. Unfortunately, I was not given that chance.

11. I was not given printed copies of any of the documents I was required to sign.

12. I have reviewed the documents filed as **Exhibits A and B to the Declaration of Kashmiere Apollon** In Support of Defendant's Motion to Compel Arbitration and Stay Proceedings.

13. I recognize my signature on page 3 of **Exhibit B**, but I do not recall signing the agreement.

14. I do not recall whether I was given pages 1 and 2 of **Exhibit B**.



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

15. I do not recall whether I was given any part of **Exhibit A**.

16. In reviewing these documents in the process of preparing this declaration, I do not recognize or recall ever seeing these documents before.

17. Had I received copies of **Exhibits A** and **B**, I would have exercised my right under the opt-out provision of the arbitration agreement. However, to the best of my knowledge, I was not given that chance.

18. Defendant never informed me how I could access any of the documents I was required to sign during my onboarding on November 20, 2025.

19. I have reviewed the documents attached as **Exhibits 2 – 18 to the Declaration of Cassandra Lenning** in support of my Opposition. Although I see e-Signature pages at the end of those documents, many of which say that I signed them on November 20, the only document I recognize from November 20 is the Team Member Handbook because that was the only document Mr. Kemp called our attention to, which is attached as **Exhibit 23 to the Declaration of Cassandra Lenning**. I do not recognize any of the other documents at **Exhibits 2 – 18** as documents that were shown to me, and that I was required to sign, on November 20 since I was given so little time to review them.

20. I have reviewed the timestamps of the e-Signatures on **Exhibits 2 – 15**. Some of these timestamps are within a few minutes of each other for several documents. It was not realistic for me to properly review all of those documents in such a short time span. However, those time stamps match my memory that I was being pressured to sign these documents as quickly as possible by Mr. Kemp.

21. At least one of the documents was also signed between 12:30 PM and 1 PM on November 20. That matches my memory that we were required to continue signing the document



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

through our lunch break.

22. Part of my duties as a Yard Driver required that I move both fully loaded outbound trucks and empty inbound trucks around Defendant's Kent Supply Chain Center, where my employment was based.

23. For example, when an empty truck arrived at the Supply Chain Center, I was tasked with moving that truck either to be loaded or to be parked until its next departure.

24. Once trucks were loaded full of Defendant's product, I was required to drive the truck from the loading bay and position it for hand-off to the driver that would ultimately make the delivery.

25. I was made aware through the course of my employment that these trucks were delivering to, and returning from deliveries to, locations both inside and outside of Washington State. For example, I was aware that many of the trucks I handled were bound for out-of-state locations, including Oregon, Idaho, and Montana. I understood that the Kent Supply Chain Center supplied a large portion of the Pacific Northwest with Defendant's product.

26. I was also responsible for some vehicle maintenance tasks. For instance, I took trucks involved in interstate and intrastate deliveries of Defendant's product for washing and cleaning, and communicated maintenance needs of those trucks so that they could be repaired and continue to make deliveries.

27. Since the majority of my role involved driving these large trucks, I was required to hold a valid unexpired Commercial Driver's License in good standing.

28. On at least one occasion, I was required to sign a form titled "General Consent for Limited Queries of the Federal Motor Carrier Safety Administration Drug and Alcohol Clearinghouse."



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

29. **Exhibit 22 to the Declaration of Cassandra Lenning** filed in support of my Opposition is a true copy of that consent form.

30. I would not be able to afford to pay attorneys to take on this lawsuit. I agreed to be represented by Bibiyan Law Group, P.C., because they offered to take my case on a contingency basis. Had they not offered that to me, I would be unable to pursue this case.

**Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.**

Signed at Spanaway (city), Washington on the 23rd day of October, 2026.

/s/ Santrel McClusky

Santrel McClusky



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043