# EXHIBIT

# 24

**Santrel McClusky v. Domino's Pizza LLC**

U.S. District Court for the Western District of Washington

Case No. 2:26-cv-03189

## DECLARATION OF CASSANDRA W. LENNING IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

FILED
2026 AUG 27 01:30 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 26-2-23364-1 KNT

THE HONORABLE HAYDEE VARGAS
Noted: September 10, 2026
Without Oral Argument

IN THE SUPERIOR COURT FOR THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| SANTREL McCLUSKY, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>DOMINO'S PIZZA LLC, a Michigan Limited Liability Corporation conducting business in the State of Washington, and DOES 1 – 100, inclusive,<br><br>Defendants. | NO. 26-2-23364-1 KNT<br><br>**DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** |

## I. INTRODUCTION & RELIEF REQUESTED

Defendant Domino's Pizza LLC ("Defendant") hereby respectfully moves, pursuant to Federal Arbitration Act, 9 U.S.C. §§ 1–16 (FAA), to stay current judicial proceedings and to compel Plaintiff Santrel McClusky to arbitrate the claims in his Complaint. Plaintiff and Defendant agreed to arbitrate all employment-related legal claims with an impartial third-party arbitrator and governed by the American Arbitration Association (AAA) rules. Plaintiff breached his agreement by filing the Complaint in the improper forum.

In this case, Plaintiff alleges moonlighting violations by Defendant. This claim is squarely encompassed by the arbitration agreement Plaintiff signed when he was first hired. Because Plaintiff will not honor his agreement, the FAA, 9 U.S.C. §§ 1, *et seq.*, requires this



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908

Court make him do so. Accordingly, Defendant moves this Court to compel arbitration and stay proceedings.[1]

## II. FACTS RELEVANT TO MOTION

Defendant, Domino's Pizza LLC, is a limited liability company organized under the laws of Michigan and registered to conduct business in the State of Washington. Dkt. 7 ("First Amended Complaint"), ¶ 3.2.

Plaintiff is a former employee of Defendant. Declaration of Kashmiere Apollon In Support of Defendant's Motion to Compel Arbitration ("Apollon Decl."), ¶ 5. Plaintiff was hired as a Yard Driver, a position that involved shuttling trucks around the yard at the Defendant's Supply Chain Center. Apollon Decl., ¶ 6; Declaration of Mikell Young In Support of Defendant's Motion to Compel Arbitration ("Young Decl."), ¶¶ 5–7. Plaintiff was employed as a Yard Driver from November 20, 2025, until his termination on March 13, 2026, for violations of company policies. Apollon Decl., ¶¶ 7–12. These violations are separate and unrelated to the claims brought by Plaintiff.

The role of a Yard Driver is limited to shuttling trucks around the Defendant's Supply Chain Center. Young Decl. ¶ 7. When the Defendant's Supply Chain Center receives product, the Yard Driver generally plays no role in unloading product. *Id.* at ¶ 5. The Warehouse Associates unload the product into the Defendant's Supply Chain Center. *Id.* For outbound

---

[1] By filing this motion, Defendant does not waive its right to assert any affirmative defenses. Defendant asserts the following affirmative defenses: (1) failure to state a claim; (2) Plaintiff lacks standing; (3) failure to mitigate; (4) Plaintiff is subjected to mandatory arbitration; (5) Defendant is not the cause of Plaintiff's damages; (6) offset; (7) Defendant's actions and conduct were objectively reasonable under the circumstances; (8) Defendant's actions or omissions were legitimate, made in good faith, and reasonable; (9) Plaintiff's claims are barred by the doctrine of waiver, estoppel, release, accord, satisfaction, and payment; (10) some or all of Plaintiff's claims are barred by the applicable statute of limitations; (11) Plaintiff's proposed class fails to satisfy the prerequisites for class or collective treatment under applicable law; (12) Plaintiff's Complaint fails to adequately plead a valid class or collective claim as to each allegedly similarly situated putative class member and fails to identify any other potential plaintiffs; (13) Plaintiff's claims are barred by the doctrine of after-acquired evidence; (14) class certification is inappropriate due to conflicts of interest between Plaintiff and putative class members, or between and among putative class or subclass members; and (15) Plaintiff's claims are subject to mandatory binding arbitration agreement and class action waiver. Defendant reserves the right to allege additional defenses in filings its Answer and as they may become known during discovery.



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908

product, a Yard Driver moves one of the Defendant's trailers to the loading dock but does not assist with loading the trailer. *Id.* at ¶ 6. The Warehouse Associates load the trailer. *Id.* Once the trailer is loaded, the Yard Driver moves the loaded trailer to another area of the yard where a separate delivery driver takes it for outbound delivery. *Id.* Yard Drivers are also responsible for ensuring trailers are washed and cleaned out and communicating maintenance needs. *Id.* at ¶ 8.

At the outset of Plaintiff's employment on November 20, 2025, Plaintiff was provided with the Arbitration Agreement and was given time to review it. Apollon Decl., ¶¶ 7–8. The Arbitration Agreement is three pages long and includes a cover letter explaining what the Arbitration Agreement is. Apollon Decl., ¶ 7, Exhibits A and B. The cover letter is from the Vice President of Human Resources, Andrew Ueeck, summarizing what the Arbitration Agreement entails. Apollon Decl., ¶ 7, Exh. A. In bold letters, the letter states:

> **By signing the Arbitration Agreement and not opting out, both you and the Company are giving up various rights, including the right to a trial by jury as well as any right to arbitrate as a class representative, as a class member, or in a collective action.**

*Id.* The second page is titled in bold large letters "**SIGNIFICANT FEATURES OF THE DOMINO'S ARBITRATION PROGRAM.**" *Id.* This page has seven bullet points outlining the benefits to the Arbitration program. The Arbitration Agreement follows these two pages. Apollon Decl., ¶ 7, Exh. B.

Page two of the Arbitration Agreement includes the waiver of jury trial provision in bold and all caps lettering:

> **Waiver of Jury Trial.** **EMPLOYEE AND THE COMPANY UNDERSTAND THAT BY AGREEING TO THIS BINDING ARBITRATION PROVISION, BOTH GIVE UP THEIR RIGHT TO TRIAL BY JURY OF ANY CLAIM EITHER MAY HAVE AGAINST THE OTHER, EXCEPT AS EXPRESSLY PROVIDED HEREIN.**



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908

*Id.* Right after that provision, the opt-out provision explains how an employee can opt out of the Arbitration agreement.

> **<u>Exclusive Opt-Out Right.</u>** Employee has the right to opt out of the obligation set forth herein to submit to binding arbitration. To opt out, Employee must send via electronic mail or first-class mail, within **<u>thirty (30) calendar days</u>** of signing this Arbitration Agreement, an email to [HR email] or a letter addressed to Domino's Pizza LLC, Attention: Team Leader, Human Resources Shared Services [address omitted], stating that Employee has elected to opt out of the Arbitration Agreement. The email/letter must clearly state Employee's name, employee ID, and a telephone number where Employee can be reached…Absent the proper and timely exercise of this opt-out right, Employee will be required to arbitrate all disputes encompassed by this Arbitration Agreement.

Apollon Decl., ¶ 11, Exh. B. The provision boldly provides the time period for which the employee must opt-out by. *Id.* Plaintiff did not opt out of the Arbitration Agreement. *Id.* at ¶ 11. As such, Plaintiff assented to the terms of the Arbitration Agreement. *Id.* at ¶ 9.

The Arbitration Agreement also encompasses the moonlighting claim asserted by Plaintiff in his Complaint. By its terms, the Arbitration Agreement applies to claims arising out of Plaintiff's employment, including claims based on contract, tort, statute, regulation, ordinance, equity, or other legal theory. Apollon Decl., Exh. B. Plaintiff's moonlighting claim arises directly from this employment and is based on an alleged statutory violation. Accordingly, the claim falls squarely within the scope of the Arbitration Agreement.

## III. <u>EVIDENCE RELIED ON</u>

Defendant relies on the Declaration of Mikell Young and Kashmiere Apollon in Support of Defendant's Motion to Compel Arbitration and Stay Proceedings and the Court's records and files in this matter.

## IV. <u>STATEMENT OF ISSUES</u>

Should Plaintiff be compelled to arbitrate his claims on an individual basis against Defendant because he signed a mutual arbitration agreement that selected arbitration as the exclusive forum for resolving any employment disputes? ***Yes.***



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908

## V. AUTHORITY

### A. The Federal Arbitration Act Governs the Agreement.

The Agreement expressly provides that "[a]ny arbitration hereunder shall be governed by the Federal Arbitration Act…." Apollon Decl., Exh. B. The FAA governs "a written provision in any contract evidencing a transaction involving commerce," 9 U.S.C. § 2—a phrase the Supreme Court has read as coextensive with the full reach of the Commerce Clause. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56, 123 S. Ct. 2037 (2003). That standard is readily satisfied here: the Arbitration Agreement is part of Plaintiff's employment relationship with Defendant, an enterprise formed under the State of Michigan and conducts business in all 50 states. The FAA therefore governs the Agreement.

### B. The Federal Arbitration Act Requires that this Court Hold Plaintiff to his Arbitration Agreement and Compel this Case into Arbitration.

The Federal Arbitration Act (FAA) makes written arbitration agreements enforceable and requires courts to compel arbitration of the claims the parties agreed to arbitrate, in accordance with the agreement's terms. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 S. Ct. 1740 (2011). The Act reflects a federal policy favoring arbitration, but that policy does not place a thumb on the scale in favor of arbitration for its own sake. *See Morgan v. Sundance, Inc.*, 596 U.S. 411, 142 S. Ct. 1708 (2022). As the Supreme Court has explained, the FAA's "policy favoring arbitration does not authorize federal courts to invent special, arbitration-preferring procedural rules;" rather, it "is merely an acknowledgment of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." *Id.* at 418 (internal quotation marks omitted). The policy thus makes arbitration agreements "as enforceable as other contracts, but not more so." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12, 87 S. Ct. 1801 (1967). "[A] court must hold a party to its arbitration contract just as the court would to any other kind." *Morgan*, 596 U.S. at 418. Where the parties have



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908

agreed to arbitrate, the scope of that agreement is determined by ordinary principles of contract interpretation, giving effect to the parties' intent. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S. Ct. 927 (1983). Washington courts likewise recognize a public policy favoring arbitration. *Godfrey v. Hartford Cas. Ins. Co.,* 142 Wn.2d 885, 892, 16 P.3d 614 (2001).

When evaluating a motion to compel arbitration, courts generally limit their review to two issues: "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). If the answer to both questions is affirmative, a court must compel arbitration.

**C. Plaintiff Signed a Valid and Enforceable Mutual Arbitration Agreement.**

Under the FAA, written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. An offer of employment is sufficient consideration for the employees' agreement to arbitrate future employment related legal claims. *EEOC v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742, 749–50 (9th Cir. 2003) (holding employers can require employees to arbitrate their future Title VII claims as a condition of employment). *See also Labriola v. Pollard Group, Inc.*, 152 Wn.2d 828, 836, 100 P.3d 791 (2004) (stating "[c]onsideration is a bargained-for exchange of promises" and holding employee's acceptance of employment was valid consideration for non-compete clause signed at the time of hire). *See also Robbins v. Comcast Cable Commc'ns, LLC*, 3:19-CV-05603-RBL, 2019 WL 4139297, at *3, unpublished, (W.D. Wash. Aug. 30, 2019) (reciprocal promises to arbitrate was sufficient consideration); *Sprinkle v. Gen. Dynamics Land Sys.*, C09-1672Z, 2010 WL 1330328, at *10, unpublished (W.D. Wash. Mar. 30, 2010) (claim of substantive unconscionability based on a lack of mutuality failed when both parties were required to arbitrate certain claims related to their employment agreement); *Eddie v. Milgard Mfg. Inc.*, No. C09-5052FDB, 2009 WL 2029789, at *3, unpublished, (W.D. Wash. July 8, 2009) (compelling arbitration where



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908

employee signed the relevant policy at the start of employment); *Lutz c. Cont'l Servs.*, Inc., No. C07-974Z, 2007 WL 4165274, at *1, unpublished, (W.D. Wash. Nov. 16, 2007) (enforcing arbitration in employment agreement signed at the initiation of employment).

Here, there is no question that Defendant offered Plaintiff a mutual agreement to arbitrate as a condition of employment, which he signed—waiving his right to a jury trial and the ability to assert class claims. His new employment and the mutuality of the arbitration was his consideration. Accordingly, his arbitration agreement is presumptively enforceable, and he must prove it is not. *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 302, 103 P.3d 753 (2004); *Kane v. Mednax Servs., Inc.*, No. 2:22-CV-0159-TOR, 2022 WL 16748784, at *4 (E.D. Wash. Nov. 7, 2022).

**D. Plaintiff's Arbitration Agreement Squarely Encompasses his Current Claims.**

Plaintiff agreed to arbitrate claims that "may arise out of or relate to the employment, context." Apollon Decl., Ex. B. Specifically, Plaintiff's Arbitration Agreement covers "any claims related to wages, reimbursements, discrimination, and harassment, whether based on state law, Title VII of the Civil Rights Act of 1964, as amended, as well as all other federal, state or local laws or regulations." *Id.*

Such language is exceptionally broad. The Ninth Circuit Court of Appeals recently reaffirmed that the words "arising out of or relating to" are to be interpreted broadly. *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086–87 (9th Cir. 2018), *holding modified on other grounds by Lee v. Fisher*, 70 F.4th 1129 (9th Cir. 2023) (holding likewise); *Baton v. Ledger SAS*, No. 21-17036, 2022 WL 17352192, at *2 (9th Cir. Dec. 1, 2022). They encompass any claim that logically or causally connects to an agreement. *Yei A. Sun*, 901 F.3d at 1086–87.

The United States District Court for the District of Arizona recently applied these principles in interpreting an arbitration agreement. *Loc. 640 Trustees of IBEW & Arizona Chapter NECA Health & Welfare Tr. Fund v. CIGNA Health & Life Ins. Co.*, No. CV-20-



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908

01260-PHX-MTL, 2021 WL 3290534, at *7–8 (D. Ariz. Aug. 2, 2021). It explained that "[w]here, as here, a provision requires arbitration of disputes 'arising out of or relating to' an agreement, the provision is considered broad." *Id.* (citing *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 922 (9th Cir. 2011) ("[W]hen parties intend to include a broad arbitration provision, they provide for arbitration 'arising out of or relating to' the agreement.")).

Just so here, Plaintiff seeks damages for alleged moonlighting violations arising under Washington law, specifically Chapter 49.62 RCW. These claims fall squarely within the scope of the Arbitration Agreement, which expressly encompasses statutory claims arising out of Plaintiff's employment. Because Plaintiff's moonlighting claims arise directly from his employment and are based on an alleged violation of state law, they are subject to the Arbitration Agreement and must be arbitrated.

Furthermore, because Plaintiff purports to sue on behalf of a putative class, one final point confirms that arbitration must proceed on an individual basis. The Arbitration Agreement not only requires arbitration of covered claims, but it also separately waives any right to arbitrate "as a class representative, as a class member, or in a collective action." Apollon Decl., Exh. B. This Court must enforce that waiver because the FAA governs the Arbitration Agreement. The United States Supreme Court has held that a state-law rule refusing to enforce class-arbitration waivers "stands as an obstacle to the accomplishment" of the FAA's objectives and is therefore preempted. *AT&T Mobility LLC*, 563 U.S. at 352. Accordingly, because Plaintiff's claim falls within the scope of the Agreement, and the Agreement requires covered claims to be arbitrated while expressly prohibiting class or collective arbitration, Plaintiff must be compelled to arbitrate his claims on an individual basis.

**E. The Arbitration Agreement is Not Unconscionable.**

The party opposing enforcement of an arbitration agreement must prove the agreement was either procedurally or substantively unconscionable. *Gorden v. Lloyd Ward & Assocs., P.C.*, 180 Wn. App. 552, 563, 323 P.3d 1074 (2014). Plaintiff cannot prove either. The standard



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908

to prove unconscionability is very difficult to satisfy. *See 25 Wash. Practice*, Contract Law and Practice § 9:2 (3d ed.). Procedural unconscionability will only be found when there are defects in the processes of making a contract, such as deception or the use of fine print and unclear language to hide the provision that suggests a lack of meaningful choice. *Burnett v. Pagliacci Pizza, Inc.*, 196 Wn.2d 38, 54, 470 P.3d 486 (2020). Courts consider the manner in which the contract was entered, whether the employee had reasonable opportunity to understand the terms of the contract, and whether important terms were hidden. *Id.* at 54. Substantive unconscionability will only be found if the contract's terms are unexpectedly harsh or grossly favorable to one side. *Id.* at 57.

1. *The Arbitration Agreement is Not Procedurally Unconscionable.*

The parties' agreement to arbitrate was not procedurally unconscionable. The arbitration provisions were not buried in "fine print," or hidden within an employment handbook. Cf. *Id.* at 56–57 (finding arbitration agreement procedurally unconscionable when appearing on page 18 of a 23-page handbook that was provided only after employee signed employment agreement). Here, by contrast, the arbitration agreement is a standalone, three-page document, with two additional pages explaining the arbitration agreement, designed to draw Plaintiff's attention to the nature and consequences of the agreement. The first page consists of a letter summarizing the arbitration agreement and expressly advises Plaintiff, in bold type, that by entering into the agreement, the parties waive certain rights unless Plaintiff elects to opt out. The second page prominently states, in large, bold type, "Significant Features of the Domino's Arbitration Program," followed by seven bullet points summarizing the agreement's material terms. Page four again informs Plaintiff, in bold type, that he has 30 days after signing to opt out of the agreement. Plaintiff then signed the agreement on page five.

These circumstances demonstrate that Plaintiff was given reasonable opportunity to review and understand the arbitration agreement, including the rights affected by it and his ability to reject arbitration altogether by opting out. Plaintiff was not given an unreasonable



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908

time constraint to review and sign the Arbitration Agreement; rather, he was given time to review the agreement and 30 days to opt out. Also, unlike the agreement in *Burnett,* the arbitration provisions here were conspicuous, separately presented, and accompanied by repeated notice of their significance. There was therefore no procedural defect in contract formation, and Plaintiff cannot avoid his agreement to arbitrate merely because he now prefers to pursue his claims in court.

The Arbitration Agreement's opt-out provision independently forecloses any claim of procedural unconscionability. Federal courts applying the FAA have consistently held that an arbitration agreement is not a contract of adhesion—and therefore is not procedurally unconscionable—where the employee had a genuine opportunity to opt out but declined to exercise it. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016) ("an arbitration agreement is not adhesive if there is an opportunity to opt out of it"); *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199–1200 (9th Cir. 2002) (treating the "genuine possibility to opt-out of the arbitration program" as "dispositive" and holding the agreement not procedurally unconscionable where the employee had 30 days to opt-out but did not); *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002) (materially identical agreement not procedurally unconscionable where the employee had the right to opt-out); *Baghdasarian v. Macy's Inc.*, No. 24-3438, 2025 WL 999082, at *2 (9th Cir. Apr. 3, 2025) (employee's failure to opt out over multiple opportunities defeated her procedural-unconscionability challenge). *But see Cir. City Stores, Inc. v. Adams*, 279 F.3d 889, 893 (9th Cir. 2002) (holding that an arbitration agreement is unconscionable where there is no opt-out provision). Here, Plaintiff had 30 calendar days to opt out of the Arbitration Agreement by a simple email or first-class letter to Domino's Human Resources, and he chose not to do so. Apollon Decl., ¶ 11. The method to opt-out is not unduly burdensome as email is widely used. That meaningful opportunity to opt-out forecloses any contention that the Arbitration Agreement was a contract of adhesion or was otherwise procedurally unconscionable.



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908

2. *The Arbitration Agreement is Not Substantially Unconscionable.*

Courts consider whether a contractual provision is substantially unconscionable because it is one-sided or overly harsh. *Burnett*, 196 Wn.2d at 57. In making this determination, courts consider whether the provision is "shocking to the conscience," "monstrously harsh," or "exceedingly calloused." *Id.* (internal citations omitted). In *Burnett*, the court found the arbitration agreement substantively unconscionable because its procedures barred terminated employees from pursuing claims, effectively shortened the applicable statute of limitations, and required supervisor review when the supervisor was responsible for the alleged misconduct. *Id.* at 58. These procedural hurdles unfairly favored the employer and impeded employees' ability to pursue arbitration. *Id.*

*Burnett* is readily distinguishable from Plaintiff's Arbitration Agreement with Defendant. Unlike the agreement in *Burnett*, Plaintiff's Arbitration Agreement does not impose procedural hurdles that unfairly favor Defendant or impede Plaintiff's ability to pursue his claims in arbitration. Specifically, the Arbitration Agreement does not require Plaintiff to first report his claim to a supervisor or complete an internal review process before initiating arbitration. It also does not shorten the applicable statutes of limitation period. Further, Plaintiff may initiate arbitration regardless of whether his employment has ended, meaning that termination of Plaintiff's employment does not prevent him from pursing arbitration. The Arbitration Agreement also provides for mutual obligations to arbitrate, selection of a neutral and qualified arbitrator—either a retired state or federal judge or an experienced licensed attorney—a right to appeal, and an opt-out provision. These provisions further demonstrate that the Arbitration Agreement does not unfairly favor Defendant or impose one-sided procedural barriers on Plaintiff. Thus, the concerns that rendered the agreement in *Burnett* substantively unconscionable are absent here.



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908

### F. This Court Should Stay Judicial Proceedings Pending Resolution of the Arbitration.

Both state and federal law mandate a stay pending arbitration. 9 U.S.C. § 3; RCW 7.04A.070(6). A stay of these court proceedings is mandatory.

## VI. CONCLUSION

Plaintiff signed a binding agreement to arbitrate his employment claims with Defendant, including those in his Complaint. But instead, he filed this action in state court. The Court therefore is required to compel arbitration on an individual basis and to stay judicial proceedings pending the outcome of the parties' arbitration.

DATED this 27th day of August, 2026.

FISHER & PHILLIPS LLP

By *s/ Clarence M. Belnavis*
Clarence M. Belnavis, WSBA #36681

By *s/ Isabell R. Brooks*
Isabell R. Brooks, WSBA #60068

1700 Seventh Avenue, Suite 2200
Seattle, WA 98101
Phone: (206) 682-2308
Email: cbelnavis@fisherphillips.com
Email: ibrooks@fisherphillips.com

*Attorneys for Defendant*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies under the laws of the state of Washington that on the date written below, I caused a true and correct copy of the foregoing document to be served on the following attorneys, via the method(s) indicated:

Adarsh N. Parthasarathy, WSBA #62319
Danielle E. Kim, WSBA #54154
Cassandra Lenning, WSBA #54336
Bibiyan Law Group, P.C.
1460 Westwood Blvd.
Los Angeles, CA 90024
Telephone: (310) 438-5555
aparthasarathy@tomorrowlaw.com
dkim@tomorrowlaw.com
clenning@tomorrowlaw.com

*Attorneys for Plaintiff*

☒ **King County Script Portal**
☒ **First-Class Mail, postage prepaid**
☒ **Email (courtesy copy)**

DATED this 27th day of August, 2026.

*s/ Lynn Van Eyck*
Lynn Van Eyck, Legal Secretary



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908