# EXHIBIT

# 27

**Santrel McClusky v. Domino's Pizza LLC**

U.S. District Court for the Western District of Washington

Case No. 2:26-cv-03189

## DECLARATION OF CASSANDRA W. LENNING IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

THE HONORABLE HAYDEE VARGAS

FILED
2026 SEP 10
KING COUNTY
SUPERIOR COURT CLERK

CASE #: 26-2-23364-1 KNT

**SUPERIOR COURT FOR THE STATE OF WASHINGTON**
**FOR KING COUNTY**

SANTREL MCCLUSKY, individually and on behalf of all others similarly situated,

Plaintiff,

v.

DOMINO'S PIZZA LLC, a Michigan limited liability company conducting business in the State of Washington, and DOES 1 through 100, inclusive,

Defendants.

No. 26-2-23364-1 KNT

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

## I. INTRODUCTION

In *Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246 (2024), Chief Justice Roberts asked a rhetorical question to elucidate the contours of the transportation worker exemption to the Federal Arbitration Act (FAA): "Does a pizza delivery company derive its revenue mainly from pizza or delivery?" *Id.* at 254. As he later points out, that's not the right question. What matters for the purpose of the exemption is not what a company does, but what a worker does for a company—"A transportation worker need not work in the transportation industry to fall within the exemption from the FAA provided by §1 of the Act." *Id.* at 256.

Defendant Domino's Pizza boldly claims the FAA governs the arbitration agreement it seeks to enforce here, but fails to even mention the transportation worker exemption, even after Plaintiffs' counsel raised it during a meet and confer prior to Defendant filing the present motion.



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 Fifth Avenue, 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

Lenning Decl., ¶¶3-5. Indeed, Defendant's failure to inform the Court of *Oakley v. Domino's Pizza, LLC*, a Division I decision from four years ago analyzing the FAA's transportation worker exemption, which Plaintiff's counsel also raised during their meet and confer, is disingenuous at best, and at worst a deliberate failure to inform the Court of controlling authority adverse to Defendant's position. In *Oakley*, Defendant lost on the same arguments to compel arbitration in a wage and hour class action brought by a Delivery and Service driver employed at Defendant's same Kent, Washington Supply Chain Center under the same arbitration agreement. *See infra*, at § III(A). The Division I panel held the transportation worker exemption applied, Washington State law (not the FAA) governed the arbitration agreement, and the agreement—which prohibited class actions—was unenforceable because it "frustrates our state's public policy of protecting workers' rights to undertake collective actions and ensure the proper payment of wages." 23 Wn. App. 2d 218, 235 (2022). In its twelve-page briefing to the Court, Defendant neglected to even mention *Oakley* despite it dealing with the same arbitration agreement, the same Supply Chain Center, and the same arguments and issues Defendant has raised here.

Defendant's Motion should be denied in line with *Oakley* and recent precedent from the U.S. Supreme Court. As with the plaintiff in *Oakley*, Santrel McClusky is a transportation worker exempt from application of the FAA because, as a Yard Driver, he was involved in "an intrastate portion of an interstate .... business" that is "immediately connected with interstate commerce." *Norfolk & Western R. Co. v. Pennsylvania*, 136 U.S. 114, 119-20 (1890) (quoted approvingly by *Flowers Foods, Inc. v. Brock*, 1467 S. Ct. 1358, 1365 (2026), for the same proposition). Even if he were not, however, the arbitration agreement Defendant is attempting to enforce is both procedurally and substantively unconscionable under Washington law.

Plaintiff respectfully requests this Court deny Defendant's Motion to Compel Arbitration.



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 Fifth Avenue, 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

In the alternative, Plaintiff requests the Court permit limited discovery specific to the role of Yard Drivers in Defendant's interstate supply chain operations, Plaintiff's alleged method of assent to the arbitration agreement, and other information related to unconscionability, integral to opposing Defendant's motion.

## II. STATEMENT OF FACTS

Defendant hired Santrel McClusky as a "Yard Driver" on October 24, 2025. In Plaintiff's offer letter, Defendant defined McClusky's "Support Area" as "Transportation," reporting to the "Manager, Transportation" for Defendant's "Supply Chain Center." Lenning Declaration, Exhibit 1. Defendant identifies the responsibilities of Yard Drivers to include moving "Defendant's trailers to the loading dock … while Defendant's Warehouse Associates load the [outbound] product," and, once loading is complete, "mov[ing] the loaded trailer to another area of the yard, where a separate delivery driver takes it for outbound delivery." Dkt. 11, ¶ 6. *See also* McClusky Declaration, ¶¶ 22-24. Additionally, Yard Drivers take trailers to be washed and cleaned, and communicate maintenance needs of the trucks used in delivering Defendant's product. Dkt. 11, ¶ 8; McClusky Decl., ¶ 26.

McClusky's Yard Driver position was subject to the Federal Motor Carrier Safety Administration ("FMCSA") regulations. Lenning Decl., Ex. 22. Among the many documents Defendant required McClusky to electronically acknowledge during his November 20, 2025 onboarding were:

- General Consent for Limited Queries of the FMCSA Drug and Alcohol Clearinghouse;
- Supply Chain Services D&S Driver Safety Bonus Program Guidelines (applying to "full time, active team members whose primary role is driving," listing "Yard



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 Fifth Avenue, 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

Drivers" specifically);

- Transportation Safety Policy – Supply Chain Services (United States) (applying to "all drivers or other team members operating Company vehicles … in Domino's Supply Chain Centers"); and
- Driver Operation Protocol (DrOP) Manual: Handbook for Truck.

Lenning Decl., Exs. 2-5. These documents all appear to be specific to transportation workers. As part of his role, McClusky also was required to sign a consent form for Defendant to obtain his Safety Performance History pursuant to FMCSA regulations requiring "motor carrier[s]" to make investigations and inquiries "with respect to each driver it employs." *Id.* at Ex. 22; 49 C.F.R. § 391.23.

Following his termination, Defendant furnished McClusky with a copy of his personnel file pursuant to RCW 49.12.250, which requires inclusion of "[a]ll employment agreements" between Defendant and McClusky. RCW 49.12.240(2)(f). The file included around 300 pages of dense policy documents, handbooks, manuals, and other forms McClusky was required to rush through and sign on his first day of employment without any opportunity to read them.[1] McClusky Decl. at ¶¶ 6-21. Each of the documents were purportedly signed electronically. *See, e.g.*, Lenning Decl., Ex. 2 at p. LENNING_006[2] (signature page purporting to identify the date and time of the e-Signature). But notably some do not contain any date or timestamp for the e-signature. *See* Lenning Decl., ¶¶ 24-27 & Exs. 15-18.

---

[1] These documents are attached as Exhibits 2 through 18 to the Lenning Decl., and as Ex. 1 to Dkt. 1. For the Court's convenience, Lenning Decl., at ¶ 32. lists these exhibits in chronological order of signing, showing the time pressure McClusky was under, as discussed below.

[2] For the Court's convenience and in compliance with LCR 7(b)(5)(C)(ii), the Lenning Dec. has consecutive BATES-stamped numbering across each page of its exhibit attachments and stamped at the bottom right-hand corner of each page. All references to a "LENNING" page number are to those BATES numbers.



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 Fifth Avenue, 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

McClusky was not given any opportunity to review the documents he was required to sign. Rather, Defendant, through their employee, James Kemp, a "Customer Service/Operations Admin Manager" at "Domino's Supply Chain Center," required McClusky to sign these documents amidst a rush-order to review over 12-hours of video training in less than 8 hours. McClusky Decl., ¶¶ 7-10, 20, 21. Fourteen of the eighteen electronically-signed documents (all of the ones possessing date and timestamps) were signed in less than an hour between 12:36 PM and 1:23 PM on November 20. Lenning Decl., ¶¶ 11-23. *See also id.* at Ex. 23. Defendant pressured McClusky to review and sign documents during his lunch break. Lenning Decl., Ex. 14, at LENNING_138 & Ex. 23; McClusky Decl., ¶ 21. Four of the electronically-signed documents have no date or timestamp at all. Lenning Decl., Exs. 15-18. The only document from McClusky's onboarding that bears a physical signature is the arbitration agreement Defendant attempts to enforce here, which bares the same signature date. Dkt. 12, Ex. B. McClusky has no memory of the arbitration agreement or cover letter contained at Dkt. 12, Exhibits A and B, and is confident he was not given any meaningful opportunity to review those documents. McClusky Decl., ¶¶ 12-17.

## III. ARGUMENT

### A. McClusky Falls Under the Transportation Worker Exemption to the FAA.

The Federal Arbitration Act forecloses itself from being "used to compel arbitration in disputes involving 'contracts of employment' of any class of workers 'engaged in … interstate commerce.'" *Flowers Foods*, 1467 S. Ct. at 1362 (quoting 9 U.S.C. §1). This so-called "transportation worker exemption" applies to a worker so long as their work "play[s] a direct and necessary role in the free flow of goods across borders." *Bissonnette*, 601 U.S. at 256 (internal quotation marks omitted). The Supreme Court has unambiguously held a worker need not cross



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 Fifth Avenue, 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

state lines themselves, or even interact with a vehicle which crosses state lines—"say, by loading or unloading the goods it carries,"—to fall under the ambit of §1. *Flowers Foods*, 146 S. Ct. at 1363. Rather, what matters is whether the role the transportation worker plays is "immediately connected with interstate commerce." *Id.* at 1365 (cleaned up). Resolution of such a dispute is the provenance of courts—not an arbitrator—making this an appropriate forum for resolution of this question. *See New Prime Inc. v. Oliveira*, 586 U.S. 105, 111 ("[T]he enforceability of arbitration provisions under §§3 and 4 depends on whether those provisions … depends on the application of §1's exception for certain contracts of employment.") (internal quotations omitted).

Application of the FAA's transportation worker exemption to the specific arbitration clause Defendant seeks to enforce here is not an issue of first impression in Washington. Indeed, Defendant lost this same argument as applied to the very arbitration clause at issue here (differing only in the typesetting),[3] and as applied to another transportation worker at the same Supply Chain Center where McClusky was employed. *See Oakley*, 23 Wn. App. at 218 (confronting §1's application concerning a delivery and service driver employed at Domino's Kent supply chain center); *compare* Dkt. 12, Ex. B (arbitration policy at issue here) *with* Lenning Decl., Ex. 19 at p. LENNING_189-91 (arbitration policy at issue in *Oakley*).[4] In holding the exemption applied, Division I pointed to the Ninth Circuit's decision in *Rittman v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020), holding "workers employed by Amazon.com to transport

---

[3] The typesetting of an arbitration agreement, while potentially dispositive in other contexts, was not a factor relied on by the *Oakley* court in finding the arbitration agreement unconscionable.

[4] Plaintiff would also draw the Court's attention to the other exhibits attached to the Pizl Declaration filed in *Oakley*. Many of those documents are prior versions of the same transportation-worker-specific policies Defendant required McClusky to sign, as discussed above, *supra*, pp. 3-4. This is yet another similarity between *Oakley* and the instant case.



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 Fifth Avenue, 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

packages for the last mile of the shipment, from Amazon warehouses to their destination, were exempt from the FAA's application … [e]ven though the workers' journeys were generally intrastate" since the packages "remain[ed] in the stream of interstate commerce until they [were] delivered." *Oakley*, 23 Wn. App. 2d at 227-28 (modifications in original). The *Oakley* Court noted that core to the Ninth Circuit's *Rittman*'s analysis was that the Amazon packages "did not come to rest at Amazon warehouses, but, instead, the warehouses were simply part of a process by which a delivery provider transfers the packages to a different vehicle for the last mile of the packages' interstate journeys." *Id.* (cleaned up).[5] The *Oakley* Court then observed, as relates to Defendant:

> [T]he supply chain center does not mark the end of interstate transactions and the beginning of separate local transactions, but instead, as the name suggests, it is one stop in a larger supply chain. As the Domino's team member handbook describes it, "each Supply Chain facility *acts as a channel of support* for the stores it services." Therefore, like an Amazon warehouse, the supply chain centers are "simply part of a process" by which Domino's supplies its stores.

*Id.* at 228 (cleaned up).[6]

Defendant remarkably makes no effort to distinguish the *Oakley* decision from the present case, and neglects to even inform the Court of the binding appellate precedent, despite being well-aware of its existence. Lenning Decl., ¶ 3-5. This omission, and the existence of the

---

[5] *Rittmann*'s analysis follows the Supreme Court's ruling in *Flowers Foods*, which recognized §1's potential to cover even workers who do not interact with vehicles that have moved in interstate commerce. *See Flowers Foods*, 146 S. Ct. at 1364-65 (endorsing a hypothetical where even entirely intrastate movement of goods can constitute "a direct, active, and necessary part" in interstate commerce). The argument McClusky makes here is far less drastic—he interacted with trucks at *both* ends of their journey—that is, both fully loaded outbound, and empty inbound trucks—which actually *did*, or would imminently, move in interstate commerce.

[6] Domino's has notably removed this language from its handbook since the litigation in *Oakley*. Yet, the role of its supply chain centers has not changed. *Compare* Lenning Dec.l, Ex. 20 *with* McClusky Decl., ¶¶ 22-25 & Dkt. 11 *generally*.



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 Fifth Avenue, 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

*Oakley* decision, arguably estops Defendant from making the arguments they assert in the instant motion and any future reply in support thereof. *See Oakley*, 23 Wn. App. 2d at 228-29 (identifying Defendant's Kent Supply Chain Center "as a channel of support" in interstate commerce, exempting the employment of transportation workers operating there from the coverage of the FAA).

Irrespective of any potential estoppel effect *Oakley* may have, however, Defendant's own representations before this Court foreclose any argument that McClusky falls outside §1's ambit. The declarations Defendant filed in support of its motion places McClusky squarely within *Oakley*'s analysis and §1. For example, Mikell Young, the Senior Operations Manager overseeing the Kent Supply Chain Center represented that Yard Drivers move trailers loaded with Defendant's product around the yard whereupon a delivery driver takes over for outbound delivery. Dkt. 11, at ¶¶ 4-8. *See also* McClusky Decl., ¶¶ 22-25 (the trucks Plaintiff handled were bound to locations in and outside Washington, including Oregon, Idaho, and Montana). These trucks "routinely deliver[] supplies across state lines," *Oakley*, 23 Wn. App. 2d at 229, and do so without "new or subsequent transactions" serving as a "dividing line between interstate and intrastate commerce." *Rittmann*, 971 F.3d at 916 (citing *A.L.A Schechter Poultry Corp. v. U.S.*, 295 U.S. 495, 542-43 (1935)). *See also* Lenning Decl., Ex. 20, at ¶ 3 (sworn statement from the plaintiff in *Oakley* testifying the Kent Supply Chain Center served Washington, Oregon, Idaho, Montana, and Wyoming); McClusky Decl., at ¶ 25 (testifying similarly).

Plaintiff anticipates Defendant will argue, as it did (unsuccessfully) before in *Oakley*, that Domino's is not a transportation logistics company. But that is not the law. *Bissonnette*, 601 U.S. at 256. Defendant will presumably argue McClusky's role in the chain of commerce was minimal, and that he did not himself cross state lines. Again, that's not the law. *Flowers Foods*,



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 Fifth Avenue, 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

146 S. Ct. at 1363. Unless Defendant is prepared to demonstrate the role of its Kent Supply Chain Center has fundamentally changed since 2022, *Oakley* and its application of the Ninth Circuit's precedent in *Rittman* is binding on this Court, and McClusky is exempt from the FAA as a transportation worker.

**B. The Arbitration Agreement's Class Action Waiver is Unconscionable Under Washington Law, Voiding the Entire Agreement.**

Where an arbitration agreement contains a severability clause, "courts often strike the offending … provisions to preserve the contract's essential term of arbitration." *Zuver v. Airtouch Commc'ns*, 153 Wn.2d 293, 302 (2004). But where the unconscionable provisions "permeate an agreement … such that severance would essentially require [a court] to rewrite the dispute resolution agreement," courts will strike the entire agreement. *McKee v. AT&T Corp.*, 164 Wn.2d 372, 402-03 (2008). Following this Washington Supreme Court guidance, the *Oakley* court determined that, while delegation of the FAA was severable from Domino's arbitration agreement, the class action waiver, which it found unconscionable under Washington law, was not. *See Oakley*, 23 Wn. App. 2d at 233-35 (holding "the class action waiver therefore frustrates our state's public policy of protecting workers' rights to undertake collective actions"). Given the arbitration agreement at issue here is identical to the one at issue in *Oakley*, this Court should reach the same result.

Although the claim at issue here is not a wage and hour class action—but rather an anti-moonlighting class action—the agreement's class action waiver is no less unconscionable. The Washington Supreme Court has recognized "protecting parties in a position of weaker bargaining power from exploitation" is a "fundamental public policy," and "an arbitration agreement may be substantively unconscionable when it is used as a tool of oppression to prevent vindication of



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 Fifth Avenue, 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

small but widespread claims." *McKee*, 164 Wn.2d at 385. Conversely, "when wrongs are small but widespread, class actions are often the only effective way to address them." *Id.* at 397; *see Scott v. Cingular Wireless*, 160 Wn.2d 843, 854-57 (2007) (class action waiver in a cellular service subscriber contract was substantially unconscionable violating state public policy, given the claims were individually small, and "attorneys are generally unwilling to take on individual arbitrations to recover trivial amounts of money," which is "precisely why class actions were created in the first place.").

This class action falls in that bucket. Plaintiff alleges Domino's has engaged in a state-wide violation of Washington's Noncompete Law by applying an anti-moonlighting provision to all of its Washington-based workers regardless of a worker's income. Dkt. 1. The Washington State Legislature has not been shy about the harm arising from these unlawful restrictions, finding they hinder innovation and entrepreneurship, suppress wages, reduce job mobility, and harm the state's consumers and economy. Engrossed Substitute H.B. 1155 House Bill Report, 69th Leg., Reg. Sess. (Wash. 2026). The Legislature has made it illegal to "restrict, restrain, or prohibit an employee earning less than twice the applicable state minimum hourly wage from having an additional job, supplementing their income by working for another employer, working as an independent contractor, or being self-employed." RCW 49.62.070(1). The serious harm these restrictive agreements cause, particularly on low-wage workers, has culminated in their outright ban as applied to all workers beginning in 2027. RCW 49.62.020 (effective June 30, 2027). Despite this, the law provides only for a five-thousand-dollar statutory penalty. RCW 49.62.080.

Accordingly, a claim such as this one implicates the Washington Supreme Court's concern that concentrating the claims in one forum and proceeding as a class action "is likely the only way that the [employees'] rights will be vindicated" because individual employees "likely



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 Fifth Avenue, 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

do not have the bargaining power to achieve systemic victories." *Chaves v. Our Lady of Lourdes Hosp. at Pasco*, 190 Wn.2d 507, 524 (2018). The Court should consider whether Washington's Noncompete Law "evidence[s] a strong public policy" creating a "substantive, nonnegotiable statutorily-guaranteed right," and whether "[a]llowing an employment contract arbitration provision to replace this statutory cause of action would thwart public policy" protecting workers' workforce mobility and economic freedom. *See Young v. Ferrellgas, LP*, 106 Wn. App. 524, 531-32 (2001) (cleaned up) (discussing unconscionable class action waiver in the context of Washington's Minimum Wage Act); *see also Sayaseng v. Geodis Logistics, LLC*, 2025 Wash. App. LEXIS 1936, *12 (2025) (holding class action waiver in arbitration agreement rendered it unconscionable and unenforceable under Washington law because "plaintiffs seek to vindicate statutory rights that are independent, non-negotiable, and thus cannot be arbitrated.").

Such considerations are relevant to the unconscionability of both the class action waiver and the arbitration agreement as a whole. *See Oakley*, 23 Wn. App. 2d at 234-35 (considering "Oakley would not have been able to pay a lawyer to bring the suit on an individual basis," that it "is not viable from a financial standpoint" for attorneys to handle smaller claims on an individual basis, and "the prohibition on class actions may prevent Domino's employees from seeking restitution … even if they are able to afford a lawyer to represent them individually, because 'individual [employees] may be reluctant to sue their employers.'"). And many of the factors the *Oakley* court considered are shared in the instant case. For instance, McClusky would not have been able to pay his lawyers to bring this suit on an individual basis—his counsel bills between $600 - $1,050 on hourly matters. Lenning Decl., ¶ 6 (related to fees); McClusky Decl., ¶ 30 (related to unaffordability). It would be financially impractical for Plaintiffs' counsel to take on individual noncompete litigation unless it could be filed on a class basis given the low statutory



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 Fifth Avenue, 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

damages amount compared to the cost of litigation. Lenning Decl., ¶ 7. Finally, individual actions under Washington's Noncompete Law, just as those brought under the Minimum Wage Act, invite the same potential of individual retaliation. These factors all weigh in favor of finding the class action waiver, and thus the entire arbitration agreement, substantively unconscionable just as the *Oakley* court found. 23 Wn. App. 2d at 234-35.

### C. Even if the FAA Applies, Questions of Fact Remain Regarding Formation and Unconscionability, Entitling Plaintiff to Limited Discovery.

Even if the Court finds McClusky does not fall under §1, and the FAA (not Washington law) applies to arbitration agreement, the Court should permit targeted discovery into the issues surrounding formation and unconscionability of the agreement, and should continue this motion until such a time as such discovery can be completed. *See Bennett v. T-Mobile USA, Inc.*, No. 2:22-cv-01805-LK, 2023 U.S. Dist. LEXIS 83252 (W.D. Wash. May 11, 2023) (staying motion to compel arbitration to allow Plaintiffs to conduct discovery on the formation of the alleged arbitration agreements). In determining whether a valid arbitration agreement exists, courts "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). For instance, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements." *Zuver*, 153 Wn.2d. at 302.

At the outset, there are many irregularities in the present record. First, Defendant presented as part of its production pursuant to RCW 49.12.250 an arbitration agreement that is an entirely digital rendering, not bearing the physical signature of McClusky, but instead his purported *electronic* signature despite bearing neither a date nor timestamp. Lenning Decl., Ex. 21. Adding to this questionability is the agreement Defendant has provided to this Court. There,



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 Fifth Avenue, 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

pages 1 and 2 are an entirely electronic rendering, while page 3 is a scanned copy of a signature page which has been physically signed. Dkt. 12, Ex. B. Defendant makes no representation as to how this agreement was arrived at, in what format it was presented to McClusky, how much time he was given to review it, or if he was provided a copy of the agreement to take home, which are all relevant considerations under Washington Supreme Court precedence. *See generally Burnett v. Pagliacci Pizza*, 196 Wn.2d 38, 48 (2020). Here, McClusky has no memory of receiving either document, and to the contrary recalls being bombarded and pressured into signing nearly three hundred pages of paperwork in less than an hour while also being rushed through viewing 12 hours of video training in a mere seven-and-a-half hour shift. McClusky Decl., ¶¶ 7-21.

Plaintiff has served one set of discovery requests and Defendant's responses are due on September 11, the day after the instant filing deadline. Lenning Decl., ¶ 8. Allowing a short continuance of the hearing date on motions to compel arbitration is typical where, as here, an unconscionability defense to the enforcement of an arbitration is raised and discovery has not yet been had by the challenging party. *See, e.g., Hesse v. Sprint Spectrum, L.P.*, No. C06-0592JLR, 2012 U.S. Dist. LEXIS 2461 (W.D. Wash. Jan. 9, 2012) (striking motion to compel arbitration without prejudice to allow Plaintiffs to conduct discovery on unconscionability); *Newton v. Clearwire Corp.*, No. 2:11-CV-00783-WBS-DAD, 2011 U.S. Dist. LEXIS 108794, 2011 WL 4458971, at *6-*8 (E.D. Cal. Sept. 23, 2011) (permitting limited pre- arbitration discovery regarding unconscionability); *Plows v. Rockwell Collins, Inc.*, 812 F. Supp. 2d 1063, 1067-68 (C.D. Cal. 2011) (permitting four months to conduct discovery on enforceability of the arbitration agreement); *Hamby v. Power Toyota Irvine*, 798 F. Supp. 2d 1163, 1164-65 (S.D. Cal. 2011) (permitting limited pre-arbitration discovery on issue of unconscionability).



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 Fifth Avenue, 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

Through targeted discovery, Plaintiff could identify evidence related to Defendant's onboarding process and method of obtaining assent to arbitration agreements, including the presentation of such agreements, the method in which these agreements are stored and available to its employees, and answer the foregoing questions regarding the divergent formats of the text of the arbitration clause when compared to the signature page. Such a continuance will pose little prejudice to Defendant given the limited scope of discovery, and Defendant's ability to conduct reciprocal discovery. Conversely, denying such discovery would be highly prejudicial to Plaintiff. *Cf. Powel v. UHG I LLC*, No. 23-cv-86-DMS-KSC, 2023 LX 31435 (S.D. Cal. Sep. 12, 2023) (denying Defendant's motion to stay discovery on contested issues of unconscionability, and noting the Court's duty to consider "the risk of unfair prejudice to the party opposing a discovery stay").

## IV. CONCLUSION

Plaintiff urges the Court to find Plaintiff is an exempt transportation worker and Washington State law (not the FAA) governs the arbitration agreement. That being the case, the Court should further find, as Division I did in *Oakley* four years ago, that the class action waiver is unconscionable as a matter of public policy, rendering the entire agreement unenforceable. Alternatively, and as a secondary form of relief—if the Court does not believe §1 applies—Plaintiff respectfully requests the Court continue this hearing until such a time as Plaintiff is able to obtain limited discovery specific to the role of Yard Drivers in Defendant's interstate supply chain operations, Plaintiff's alleged method of assent to the arbitration agreement, and other information related to unconscionability, integral to opposing Defendant's motion.

//

//



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 Fifth Avenue, 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

I certify this memorandum contains 4,198 words in compliance with the Local Civil Rules.

DATED this 10th day of September, 2026. **BIBIYAN LAW GROUP, P.C.**

By: */s/ Adarsh N. Parthasarathy*

Adarsh N. Parthasarathy, WSBA No. 62319
Cassandra Lenning, WSBA No. 54336
Danielle E. Kim, WSBA No. 54154
**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 Fifth Avenue, 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043
Fax: (206) 225-2067
*aparthasarathy@tomorrowlaw.com*
*clenning@tomorrowlaw.com*
*dkim@tomorrowlaw.com*

*Attorneys for Plaintiff*

## DECLARATION OF SERVICE

I hereby certify that on the date noted below I caused a true and correct copy of the foregoing OPPOSITION TO MOTION TO COMPEL ARBITRATION to be delivered to the individuals noted below as follows:

| PARTY/COUNSEL | DELIVERY INSTRUCTIONS |
|---|---|
| Clarence M. Belnavis<br>Isabell Brooks<br>Fisher & Phillips LLP<br>1700 Seventh Avenue, Ste. 2200<br>Seattle, WA 98101<br>Ph: 206-682-2308<br>E-mail: cbelnavis@fisherphillips.com<br>E-mail: ibrooks@fisherphillips.com<br><br>*Attorneys for Defendants* | ☐ Hand Delivery<br>☐ Certified Mail<br>☐ Facsimile<br>☒ E-mail due KC Script Outage<br>☐ E-service via KC Script<br>☐ E-Service |

DATED this 10th day of September 2026 at Seattle, Washington.

By: /s/ *Krishita Dave*
Krishita Dave, Legal Assistant



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 Fifth Avenue, 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043