# EXHIBIT

# 28

**Santrel McClusky v. Domino's Pizza LLC**

U.S. District Court for the Western District of Washington

Case No. 2:26-cv-03189

## DECLARATION OF CASSANDRA W. LENNING IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

FILED
2026 SEP 17 09:43 AM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 26-2-23364-1 KNT

THE HONORABLE HAYDEE VARGAS
Noted: September 22, 2026
Without Oral Argument

IN THE SUPERIOR COURT FOR THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

SANTREL McCLUSKY, individually and on behalf of others similarly situated,

Plaintiff,

vs.

DOMINO'S PIZZA LLC, a Michigan Limited Liability Corporation conducting business in the State of Washington, and DOES 1 – 100, inclusive,

Defendants.

NO. 26-2-23364-1 KNT

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

## I. INTRODUCTION

The Federal Arbitration Act exempts only workers "engaged in foreign or interstate commerce." 9 U.S.C. § 1. That exemption turns on what a plaintiff's class of workers does, not the employer's business or worksite. *Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 142 S. Ct. 1783 (2022). Plaintiff, a Yard Driver who only repositioned trailers at the Kent yard, has not shown Yard Drivers transport goods interstate. The FAA governs, and arbitration must be enforced.

//

//



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908

## II. AUTHORITY

### A. Yard Drivers Are Not Transportation Workers Under § 1.

The Court decides the § 1 question. The exemption turns on "the class of workers" to which Plaintiff belongs, classified "based on what [the worker] does," not "what [the employer] does." *Sw. Airlines Co.*, 596 U.S. at 456. That class must be "directly involved in ***transporting*** goods across state or international borders" and must "at least play a direct and 'necessary role in the free flow of goods' across borders." *Id.* at 457–58. "Engaged in" interstate commerce means a "direct, active, and necessary" role in moving goods across borders. *Flowers Foods, Inc. v. Brock*, 608 U.S. 380, 387, 146 S. Ct. 1358 (2026). Although crossing state lines is not required, Plaintiff has not shown Yard Drivers play the direct, necessary, and active role required.

Plaintiff relies heavily on *Oakley* to argue Plaintiff is a transportation worker, but that reliance is misplaced. *Oakley* asks, "whether the interstate movement of goods is a central part of the class members' job description," and requires that workers be "connected not simply to the goods, but to the act of moving those goods across state or national borders." *Oakley v. Domino's Pizza LLC*, 23 Wn. App.2d 218, 226, 516 P.3d 1237 (2022). *Oakley* concerned a Class A Delivery Driver who personally drove "a semitruck with a refrigerated trailer on a multi-state route that usually included deliveries to Washington and Oregon," for whom "interstate transportation appears to be a central part of the . . . job descriptions." *Id.* at 222, 229. Yard Drivers, by contrast, neither load/unload products nor make deliveries; they only relinquish trailers to separate delivery drivers before outbound delivery. Young Decl. ¶¶ 5–7. *Oakley* establishes only that the Kent location is involved in interstate transactions—not that a Yard Driver is. For the same reason, Plaintiff's suggestion that *Oakley* somehow estops Defendant from disputing application of § 1 here is misplaced. *Oakley* decided the status of Class A delivery drivers who personally drove multistate routes; it did not decide whether Yard Drivers, whose duties are materially different, fall within the transportation worker exemption.



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908

A Yard Driver "moves one of Defendant's trailers to the loading dock and remains in the cab while Defendant's Warehouse Associates load the product," does not assist with loading, and then "move[s] the loaded trailer to another area of the yard, where a separate [class of worker] take it for outbound delivery." Young Decl. ¶ 6. "[A] Yard Driver's role is limited to moving trucks within the facility's yard." *Id.* ¶ 7. Plaintiff's own declaration agrees he "move[d] both fully loaded outbound trucks and empty inbound trucks around" the yard and "position[ed] it for hand-off to the driver that would ultimately make the delivery." McClusky Decl. ¶¶ 22, 24. He never removed product from the facility; he staged it for a separate class of workers who did. Plaintiff also says that because Yard Drivers are subject to FMCSA regulations they are necessarily transportation workers. However, FMCSA requirements apply to Yard Drivers only when they operate a CMV on a public roadway, which occurs only occasionally and is not a central part of the role.

*Flowers Foods* confirms a worker need not personally cross state lines to fall within § 1, but only because the worker there transported goods along an intrastate leg of the product's continuous interstate journey—goods that originated at out-of-state bakeries, arrived at a Colorado warehouse, and were then picked up and delivered to their destinations. *Flowers Foods*, 608 U.S. at 383–85, 389. Plaintiff performed no comparable transportation. He did not move products toward their next destination, nor load, unload, or handle them; he repositioned trailers within the yard. McClusky Decl. ¶¶ 22–24; Young Decl. ¶¶ 5–7. Plaintiff has not shown that intra-yard repositioning is itself a distinct leg of interstate transportation as opposed to an internal facility function.

Plaintiff bears the burden of establishing the § 1 exemption and has not done so. *Oakley*, 23 Wn. App. 2d at 223. The FAA therefore governs.

**B. The Class Action Waiver Is Enforceable Under *Concepcion* and *Epic Systems*.**

The Agreement delegates disputes over scope, validity, and enforceability to the arbitrator. Apollon Decl., Exh. B. Accordingly, once the Court finds the FAA applies and an



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908

agreement was formed, the class waiver challenge is for the arbitrator.

In any event, even if the Court reaches Plaintiff's unconscionability argument, it fails under the FAA. The saving clause does not preserve defenses that "interfere[] with fundamental attributes of arbitration," and a state rule conditioning enforceability on the availability of classwide procedures is preempted. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344, 352, 131 S. Ct. 1740 (2011). *Concepcion* squarely rejected Plaintiff's theory that class treatment is "the only effective way" to pursue individually small claims. "States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." *Id.* at 351. *Epic Systems* applied that rule to the employment context, requiring enforcement of agreements "providing for individualized proceedings" over an unconscionability challenge. *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502, 508–10, 138 S. Ct. 1612 (2018). Plaintiff's Washington public-policy theory is exactly such an argument, and the class-action waiver must be enforced. *See also Walz v. Walmart Inc.*, No. 3:23-CV-06083-BHS, 2024 WL 2864230 (W.D. Wash. June 6, 2024) (holding that, because the FAA applied, the class-action waiver was enforceable under *Concepcion* and *Epic Systems*, rendering *Oakley's* state-law unconscionability defense inapplicable) (Unpublished).

**C. *Oakley* Does Not Establish the Class Waiver is Unconscionable Under RCW 49.62.**

Even assuming Washington law governs, *Oakley* does not dictate the result here. Its unconscionability holding arose from a different statutory scheme reasoning a class action waiver would "thwart public policy guaranteeing fair wages" and frustrate Washington's policy protecting a collective action to ensure proper wage payment. *Oakley*, 23 Wn. App.2d at 234–35. *Oakley* does not resolve this case, which arises under a different statutory scheme and on a different record.

*Oakley's* concern that employees lack bargaining power and counsel to pursue smaller individual claims does not apply. *Oakley*, 23 Wn. App.2d at 234–35. Washington's



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908

noncompete statute, which Plaintiff relies on, expressly contemplates determination by a "court or arbitrator" and provides the greater of actual damages or $5,000, together with fees, expenses, and costs. RCW 49.62.080. That statutory scheme undermines Plaintiff's contention that individualized arbitration would prevent meaningful vindication of his claim. Thus, even under Plaintiff's reading, individualized arbitration does not render the available statutory remedies illusory.

Because RCW 49.62 expressly permits recovery by an arbitrator, individual arbitration does not render its remedies illusory. Plaintiff has not shown that *Oakley* requires the same result under RCW 49.62.[1]

**D. Plaintiff Identifies No Formation Issue and No Basis For Limited Discovery.**

Plaintiff's request for limited discovery on formation of the Arbitration Agreement has no basis. Under Washington law, unequal bargaining power "will not…justify a finding of procedural unconscionability"; the key inquiry is "whether [the party] lacked meaningful choice." *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 305, 103 P.3d 753 (2004). At minimum, Plaintiff must "show some evidence that the employer refused to respond to [his] questions or concerns, placed undue pressure on [him] to sign the agreement without providing [him] with a reasonable opportunity to consider its terms, and/or that the terms of the agreement were set forth in such a way that an average person could not understand them." *Id.* at 306–07. Plaintiff's allegations about rushed onboarding do not establish that his separately signed Arbitration Agreement was presented under the same circumstances.

*Burnett*, on which Plaintiff relies, proves the point by contrast. It turned on an arbitration policy buried on page 18 of an unsigned handbook, absent from the table of contents, that the employee "had no knowledge or notice [that it] even existed when he signed." *Burnett v. Pagliacci Pizza, Inc.*, 196 Wn.2d 38, 56–57, 470 P.3d 486 (2020). Here, there is no

[1] Defendant does not concede that *Oakley* controls any other claim or proceeding and reserves all arguments, including FAA preemption of state-law defenses based on the unavailability of class procedures.



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908

incorporated, unread handbook term. Plaintiff received a cover letter from the Vice President of Human Resources explaining the Arbitration Agreement, a page of "**SIGNIFICANT FEATURES OF THE DOMINO'S ARBITRATION PROGRAM**," and a standalone, clearly titled three-page Arbitration Agreement separately addressing the duty to arbitrate, the class-action waiver, the jury-trial waiver, and a bolded thirty-day opt-out right. Apollon Decl. Exhs. A, B. Plaintiff also admits he "recognize[s] [his] signature." McClusky Decl. ¶ 13. This is the opposite of the buried, unsigned terms in *Burnett*.

That Plaintiff signed the Agreement alongside other onboarding paperwork does not change the analysis. An arbitration agreement is not procedurally unconscionable merely because it was one of several documents signed on a take-it-or-leave-it basis, where its terms were disclosed and comprehensible. *Zuver*, 153 Wn.2d at 305–07. The "300 pages in under an hour" narrative does not establish that Plaintiff lacked meaningful choice as to the separately titled Arbitration Agreement he ***physically*** signed—unlike the electronically signed onboarding documents. The opt-out right independently confirms meaningful choice: Plaintiff had thirty days to opt out and did not. Apollon Decl. ¶ 11.

Plaintiff now contends he did not receive the Arbitration Agreement and would have opted out if he had. But *Zuver* required him to "show some evidence that the employer refused to respond to [his] questions or concerns." *Zuver*, 153 Wn.2d at 306. He does not say he requested more time or ever asked for copies. Because the formation record is fully developed, limited discovery is not warranted. The current record shows no formation issues with the Arbitration Agreement.

Plaintiff also seeks discovery into Defendant's supply-chain operations, but both parties submitted substantial evidence describing the Yard Drivers' duties. Plaintiff identifies no material factual dispute warranting further discovery.

//

//



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908

## III. CONCLUSION

Defendant thus requests the Court grant its Motion and stay this action pending arbitration.

DATED this 17th day of September, 2026.

FISHER & PHILLIPS LLP

By *s/ Clarence M. Belnavis*
Clarence M. Belnavis, WSBA #36681

By *s/ Isabell R. Brooks*
Isabell R. Brooks, WSBA #60068

1700 Seventh Avenue, Suite 2200
Seattle, WA 98101
Phone: (206) 682-2308
Email: cbelnavis@fisherphillips.com
Email: ibrooks@fisherphillips.com

*Attorneys for Defendant*

*I certify that this brief contains 1,712 words, in compliance with the Local Civil Rules.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies under the laws of the state of Washington that on the date written below, I caused a true and correct copy of the foregoing document to be served on the following attorneys, via the method(s) indicated:

Adarsh N. Parthasarathy, WSBA #62319
Danielle E. Kim, WSBA #54154
Cassandra Lenning, WSBA #54336
Bibiyan Law Group, P.C.
1460 Westwood Blvd.
Los Angeles, CA 90024
Telephone: (310) 438-5555
aparthasarathy@tomorrowlaw.com
dkim@tomorrowlaw.com
clenning@tomorrowlaw.com

*Attorneys for Plaintiff*

☒ **King County Script Portal**
☒ **First-Class Mail, postage prepaid**
☒ **Email (courtesy copy)**

DATED this 17th day of September, 2026.

*s/ Lynn Van Eyck*
Lynn Van Eyck, Legal Secretary



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908