HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON – AT SEATTLE

| | |
|---|---|
| SANTREL McCLUSKY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DOMINO'S PIZZA LLC, a Michigan limited liability company conducting business in the State of Washington, and DOES 1 through 100, inclusive,<br><br>Defendants. | NO. 2:26-cv-03189-JLR<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>**NOTED ON MOTION CALENDAR: October 30, 2026** |

## I. INTRODUCTION

Plaintiff leans heavily on *Oakley v. Domino's Pizza, LLC*, 23 Wn. App. 2d 218, 516 P.3d 1237 (2022), as though it controls this case. It does not. As Defendant explained in its state-court reply, *Oakley* involved a Class A delivery driver who personally drove a semitruck with product ***out*** of the Domino's facility to its destination. *Id.* at 222, 229. Plaintiff's role here was materially different from that in *Oakley*. He did not transport product beyond the facility; he repositioned trailers for pickup by ***delivery drivers***—the very workers at issue in *Oakley*. Plaintiff contends that *Oakley* must produce the same result because it involved the same arbitration agreement and the same Domino's facility. That argument misses the central point



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908

of *Oakley*—interstate transportation of goods was central to the delivery driver's job, and the workers had to be "connected not simply to the goods, ***but to the act of moving those goods across state or national borders.***" *Id.* at 226 (emphasis added). That principle clearly does not apply to Plaintiff. Repositioning trailers (not *goods*) *within* the facility did not make him an active participant in the products' interstate movement.

Plaintiff also gives Defendant too much credit by casting the removal of only one of Plaintiff's cases as forum shopping and gamesmanship. The explanation is considerably less dramatic: only one case was removable. Had both cases been removable, Defendant would have removed and sought to consolidate both. Plaintiff attributes strategy where there was only jurisdiction—not gamesmanship.

The central issue before this Court is that Plaintiff signed a standalone, plainly titled Arbitration Agreement, declined a thirty-day opportunity to opt out, and now resists arbitration of his wage-and-hour claims on three theories, none of which withstands scrutiny.

First, Plaintiff asks this Court to abstain under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S. Ct. 1236 (1976) in deference to a *different* case—his separate King County noncompete action. But abstention is "the exception, not the rule," and the dispositive question is whether the state proceeding will resolve all issues here. *Id.* at 813. It cannot. The state action adjudicates distinct statutory claims on behalf of a broader, different class; it will never dispose of the meal-and-rest break, sick-leave, and overtime claims Plaintiff brings here. That alone forecloses a stay. The Federal Arbitration Act's ("FAA") presence makes abstention still less tenable.

Second, Plaintiff claims the FAA's § 1 "transportation worker" exemption applies. It does not. The exemption is narrow and turns on what Plaintiff's class of workers actually does. *Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246, 252–55, 144 S. Ct. 905 (2024). Yard Drivers reposition trailers inside a single yard and hand them to a separate class of delivery



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908

drivers; they do not transport goods across state lines, and they do not load or unload the product. Plaintiff, who bears the burden, has not shown otherwise.

Third, Plaintiff argues that *Oakley* renders the class-action waiver unconscionable. But *Oakley* involved workers exempt from the FAA; here, Plaintiff is not exempt, the FAA governs, and *Concepcion* and *Epic Systems* require enforcement of the parties' agreement to individualized proceedings. Plaintiff's procedural-unconscionability theory fares no better.

## II. ANALYSIS

### A. Plaintiff Is Not Entitled to a *Colorado River* Stay.

Federal courts bear a "virtually unflagging obligation" to exercise the jurisdiction given to them even in cases involving parallel state litigation, and abstention under *Colorado River* is permitted only in "exceptional circumstances" supported by the "clearest of justifications." *Colorado River*, 424 U.S. at 813, 817–19 (internal citations omitted); *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 841 (9th Cir. 2017). The eight-factor inquiry is "not a 'mechanical checklist'"; it is weighted "'with the balance heavily weighted in favor of the exercise of jurisdiction[,]'" and "[a]ny doubt as to whether a factor exists should be resolved against a stay." *Seneca Ins. Co.*, 862 F.3d at 842 (internal citation omitted). Plaintiff cannot carry this heavy burden here.

#### 1. The State Noncompete Action Will Not Resolve the Claims Before This Court.

The threshold question is whether "the state court proceedings will resolve all issues before the federal court." *United States v. State Water Res. Control Bd.*, 988 F.3d 1194, 1203 (9th Cir. 2021). "Though 'exact parallelism…is not required,' substantial similarity of claims is necessary before abstention is available." *Seneca Ins. Co.*, 862 F.3d at 845 (quoting *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989)). The Ninth Circuit has repeatedly held that "a *Colorado River* stay is inappropriate when the state court proceedings will not ***resolve the***



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908

***entire case*** before the federal court." *State Water Res. Control Bd.*, 988 F.3d at 1204 (emphasis added); *see also Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993) (holding that a court may enter a *Colorado River* stay "only if it has 'full confidence' that the parallel state proceeding will end the litigation") *(quoting Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 277, 108 S. Ct. 1133 (1988)).

This factor is addressed as a preliminary matter and "the existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes" a stay. *Seneca Ins. Co.*, 862 F.3d at 845. Abstention necessarily contemplates that the federal court "*will have nothing further to do in resolving any substantive part of the case*." *State Water Res. Control Bd.*, 988 F.3d at 1204.

That confidence is impossible here because the two cases are not the same case. Plaintiff filed two separate lawsuits: a noncompete class action under RCW 49.62 on July 21, 2026, and this wage-and-hour class action on July 31, 2026, each on behalf of a **differently defined class**. Plaintiff concedes the noncompete class is "broader than the putative class covered by the allegations in Plaintiff's wage and hour suit," which is precisely why "it was necessary to file two separate lawsuits." Plt. Opp. at 6 n.4. The pending state motion to compel arbitration is in the noncompete case, No. 26-2-23364-1 KNT in King County Superior Court. Whatever Judge Whedbee decides about arbitrating RCW 49.62 moonlighting claims, that ruling will not adjudicate—and cannot adjudicate—Plaintiff's meal-and-rest break, sick-leave, and overtime claims, which are not before the state court. Because the state noncompete action cannot provide relief for all of the parties' claims in this wage-and-hour action, the stay Plaintiff seeks is foreclosed. *See State Water Res. Control Bd.*, 988 F.3d at 1204.



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908

Plaintiff's real complaint is the risk that the state and federal courts might analyze the same arbitration agreement differently. But piecemeal litigation, standing alone, does not supply exceptional circumstances; rather, such concerns "are present to this degree in many instances of parallel federal-state litigation" and "do not create the exceptional circumstances required." *Seneca Ins. Co.*, 862 F.3d at 847 (internal quotation marks omitted). Treating them as sufficient would improperly transform the strong presumption against abstention into a presumption in favor of abstention. *Id.*

2. <u>The FAA's Federal Policy Weighs Heavily Against Surrender of Jurisdiction.</u>

Plaintiff's own framing confirms that arbitrability under the FAA is the gateway federal-law question in this case. "[T]he presence of federal-law issues must always be a major consideration weighing against surrender" of jurisdiction. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26, 103 S. Ct. 927 (1983). The Supreme Court has squarely held that no exceptional circumstances justified a *Colorado River* stay of an action to compel arbitration, because the FAA reflects Congress's intent "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Id.* at 22. A stay that frustrates that policy is "plainly erroneous." *Id.* The same federal interest controls here and counsels decisively against a stay.

3. <u>Defendant Did Not Forum Shop; It Removed the Only Removable Case</u>.

Plaintiff's forum-shopping accusation inverts the record. Forum shopping "weighs in favor of a stay when the party opposing the stay seeks to avoid adverse rulings made by the state court or to gain a tactical advantage." *State Water Res. Control Bd.*, 988 F.3d at 1206. But "[i]t typically does not constitute forum shopping where a party acted within his rights in filing a suit in the forum of his choice," even where "[t]he chronology of events suggests that both



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908

parties took a somewhat opportunistic approach." *Seneca Ins. Co.*, 862 F.3d at 846 (internal citations omitted).

Defendant acted within its statutory rights. It removed this wage-and-hour action under the Class Action Fairness Act ("CAFA") and diversity jurisdiction. The noncompete action was not legally removable as it did not satisfy CAFA requirements, so it necessarily remained in state court. Defendant did not manufacture parallel proceedings or split a single case to secure a federal forum; rather, *Plaintiff* filed two separate suits. Defendant removed the one Congress made removable. Choosing a forum the removal statute authorizes is not the "clear-cut evidence of forum shopping" that might, in rare circumstances, support a stay. *State Water Res. Control Bd.*, 988 F.3d at 1206–08. If anything, the record suggests that Plaintiff engaged in forum shopping because he could have brought both actions in a single lawsuit, with two separate classes, but chose not to do so to avoid federal court. Accordingly, Plaintiff's forum-shopping accusation provides no basis for abstention or a stay.

### B. <u>Plaintiff Is Not a Section 1 Transportation Worker.</u>

If the Court reaches the merits, Plaintiff's exemption argument fails. Section 1 exempts only "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce," and "the party opposing arbitration…bear[s] the burden of establishing that the exemption applies." 9 U.S.C. § 1; *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1194 (9th Cir. 2024). As Defendant argued in state court, Plaintiff has not met this burden, even with a second bite at the apple.

1. <u>Plaintiff's Job Duties Are Merely Tangentially Related to the Movement of Goods.</u>

A worker belongs to a "'class of workers' based on what [he] does," not "what [the employer] does generally." *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 456, 142 S. Ct. 1783



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908

(2022). Only "workers directly involved in transporting goods across state or international borders" fall within the exemption; any exempt worker "must at least play a direct and 'necessary role in the free flow of goods' across borders" and be "actively 'engaged in transportation' of those goods." *Id.* at 457–58. These requirements keep § 1 to its "narrow" scope and "undermine[] any attempt to give the provision a sweeping, open-ended construction." *Bissonnette*, 601 U.S. at 256. The worker's "relationship to the movement of goods must be sufficiently close" that "his work plays a tangible and meaningful role in their progress through the channels of interstate commerce." *Ortiz v. Randstad Inhouse Servs., LLC*, 95 F.4th 1152, 1160 (9th Cir.), *cert. denied*, 145 S. Ct. 165 (2024).

Courts determine whether § 1 applies by examining a worker's actual, direct involvement in transporting goods through interstate commerce. In *Ortiz*, Ortiz unloaded and picked up packages; transported them to warehouse racks for organization; moved packages to the warehouse's picking section; assisted Pickers in obtaining packages for shipment; and helped the Outflow Department prepare packages for their final destination. *Id.* at 1158. Ortiz's actual work "involved processing and storing goods." *Lewis v. DG Strategic VII, LLC*, 821 F. Supp. 3d 1267, 1273 (W.D. Wash. 2026).

By contrast, workers whose job duties are "only tangentially related to [the] movement of goods" fall outside the scope of § 1. *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 911 (9th Cir. 2020) (*quoting Lenz v. Yellow Transp., Inc.*, 431 F.3d 348, 351–52 (8th Cir. 2005)). Employment at a facility engaged in interstate commerce does not itself establish the exemption; the inquiry concerns the worker's actual duties and direct contribution to interstate transportation, not merely an incidental connection arising from the employer's business. *See Saxon*, 596 U.S. at 456, 462–63. The Eighth Circuit, for example, held that a customer service



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908

representative fell outside the exemption, noting that he did not transport goods in interstate commerce, bear direct responsibility for that transportation, handle packages, or directly supervise interstate drivers. His principal task was providing information to customers. *Lenz*, 431 F.3d at 352–53.

Plaintiff's job duties, viewed as a whole, are tangential to the movement of goods. His role is to reposition trailers within the Kent Supply Chain Center for handoff to delivery drivers, while Warehouse Associates—not Plaintiff—load and unload the product. Young Decl. ¶¶ 5–7. Defendant relies on that division of responsibilities—not merely Plaintiff's limited physical contact with product—to distinguish truck moving from direct participation in the goods' interstate journey. Although Plaintiff's duties differ from those in *Lenz*, that decision illustrates that assisting a transportation operation does not, ***by itself***, establish the exemption. *See Lenz*, 431 F.3d at 352–53. Defendant contends that Plaintiff has not shown the direct and necessary connection to interstate transportation required by *Saxon* and illustrated by *Ortiz*.

2. Plaintiff's Reliance on *Oakley* and *Rittmann* Is Misplaced.

Plaintiff leans heavily on *Oakley* and *Rittmann* to establish that Plaintiff is a transportation worker, but neither case concerns a Yard Driver or a worker with similar duties. *Oakley* addressed a Class A delivery driver who personally drove a semitruck on multistate routes—a worker for whom interstate transportation was a central part of his job. *Oakley*, 23 Wn. App. 2d at 222–23. *Oakley* establishes only that the Kent location is involved in interstate transactions—not that a Yard Driver is. Plaintiff's suggestion that *Oakley* estops Defendant from disputing application of § 1 here is misplaced. *Oakley* decided the status of Class A delivery drivers who personally drove multistate routes; it did not decide whether Yard Drivers, whose duties are materially different, fall within the transportation worker exemption.



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908

*Rittmann* also concerned last-mile delivery drivers who personally carried packages that "remain[ed] in the stream of interstate commerce until they are delivered." *Rittmann*, 971 F.3d at 915. Both cases are examples of how the court analyzes an employee's actual duties and whether those duties involve active participation in the movement of products to their final destination. *Oakley*, 23 Wn. App. 2d at 226.

Plaintiff is not like either *Oakley* or *Rittmann*. As a Yard Driver, he merely moved trailers while a separate class of drivers transported the goods. A Yard Driver's role is limited to shuttling trucks around the Domino's Supply Chain Center at the Kent location. Yard Drivers generally play no role in loading or unloading product. Young Decl. ¶¶ 5–7. Warehouse Associates handle the inbound/outbound product. For inbound product, "a third-party carrier transports the product to the facility in the carrier's own truck, operated by the carrier's own driver…while Defendant's Warehouse Associates unload the product." *Id.* ¶ 5. For outbound product, a Yard Driver "moves one of Defendant's trailers to the loading dock and remains in the cab while Defendant's Warehouse Associates load the product." *Id.* ¶ 6. The Yard Driver will then position the truck for a delivery driver to take it out of the Kent Supply Chain Center. *Id.* A Yard Driver rarely comes into contact with the product. *Id.* ¶ 7.

Plaintiff's own declaration confirms this point: he moved trailers for delivery drivers around the Kent Supply Chain Center and "position[ed] [the trucks] for hand-off to the driver that would ultimately make the delivery." McClusky Decl. ¶¶ 23–24. Unlike in *Oakley*, where the Class A driver moved product outside the Kent Supply Chain Center, Plaintiff never left the Kent Supply Chain Center. Instead, he moved trucks around the Kent Yard. Unlike in *Rittmann*, where the driver actually transports product from point to point, Plaintiff never moves the product outside the facility and never loads products into or unloads products from trucks. In



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908

short, because Yard Drivers merely reposition trailers within a single facility and do not themselves transport, load, or unload goods, they are not engaged in interstate commerce within the meaning of the FAA's transportation-worker exemption.

Plaintiff also claims that because Yard Drivers are subject to FMCSA regulations, they are necessarily transportation workers. However, FMCSA requirements apply to Yard Drivers only when they operate a CMV on a public roadway, which occurs only occasionally and is not a central part of a Yard Driver's role.

### C. **Because the FAA Applies, the Class-Action Waiver Is Enforceable Under *Concepcion* and *Epic Systems*.**

Because the FAA governs, the specific unconscionability theory Plaintiff advances—that the class-action waiver is unenforceable because class procedures are necessary to make comparatively small claims economically viable—is foreclosed as a matter of federal law. Ordinary contract defenses remain available under the FAA's saving clause, but this is not one of them. The saving clause does not preserve defenses that "interfere[] with fundamental attributes of arbitration," and a state rule conditioning enforceability on the availability of classwide procedures is preempted. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344, 352, 131 S. Ct. 1740 (2011). "States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." *Id.* at 351. *Epic Systems* applied that rule to the employment context, requiring enforcement of agreements "providing for individualized proceedings" over an unconscionability challenge. *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502, 508–10, 138 S. Ct. 1612 (2018).

A court in this district recently applied these principles in a materially similar posture: because the FAA applied, it held that the class-action waiver was not unconscionable under *Concepcion* and *Epic Systems* and that the state-law unconscionability defense announced in *Oakley* was inapplicable. *Walz v. Walmart Inc.*, No. 3:23-cv-06083-BHS, 2024 WL 2864230, at *8 (W.D. Wash. June 6, 2024). Walz contracted with Walmart to work as a delivery driver



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908

through Walmart's Spark Driver application. *Id.* at *1. As part of his employment, he signed an arbitration agreement and class-action waiver. *Id.* Walz brought a wage-and-hour class action in Pierce County Superior Court, and Walmart removed the case to federal court under CAFA and moved to compel arbitration. *Id.* at *2. The issue before the district court was whether Walz qualified for the transportation-worker exemption under § 1.

The district court found that, although he delivered product from Walmart stores to customers, Walz was not completing "the last leg of a single, unbroken trip and transaction" and therefore did not qualify for the transportation-worker exemption. *Id.* at *6. Walz then argued, as Plaintiff does here, that the arbitration agreement's class-action waiver was unconscionable under *Oakley*. *Id.* at *7. But the district court explained that, unlike Walz, *Oakley* was a transportation worker and his arbitration agreement was thus exempt from the FAA's requirements. *Id.* at *8. *Walz also appeared to concede* that "the unconscionability defense announced in *Oakley* is inapplicable when a contract of employment is subject to the FAA." *Id.*

The same reasoning applies here. As explained above, Plaintiff has not shown that Yard Drivers qualify for § 1's transportation-worker exemption. Plaintiff's arbitration agreement is therefore subject to the FAA. That distinction is dispositive of the class-waiver challenge: *Oakley* applied state unconscionability law to an FAA-exempt contract, while *Walz* rejected the same challenge because the FAA governed. *Id.* at *8. Plaintiff's reliance on the same agreement and facility does not overcome that threshold distinction. Nor does his assertion that individual claims are uneconomical: that argument would condition enforcement on the availability of class procedures, precisely the result *Concepcion* and *Epic Systems* foreclose. *Concepcion*, 563 U.S. at 351–52; *Epic Sys.*, 584 U.S. at 508–09. Accordingly, *Oakley* does not control, and the class-action waiver must be enforced.



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908

**D. The Arbitration Agreement Is Not Procedurally Unconscionable.**

Although Plaintiff did not explicitly argue that the Arbitration Agreement was procedurally unconscionable, Defendant notes that it was not. Under Washington law, unequal bargaining power "will not, standing alone, justify a finding of procedural unconscionability"; the key inquiry is "whether [the party] lacked meaningful choice." *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 305, 103 P.3d 753 (2004). At a minimum, Plaintiff must "show some evidence that the employer refused to respond to [his] questions or concerns, placed undue pressure on [him] to sign the agreement without providing [him] with a reasonable opportunity to consider its terms, and/or that the terms of the agreement were set forth in such a way that an average person could not understand them." *Id.* at 306–07. Plaintiff's allegations that James Kemp pressured the group to sign quickly and that he lacked time to review the documents concern the onboarding process generally; they do not establish that the separately signed Arbitration Agreement—which, as shown below, Plaintiff executed by hand—was presented under those same circumstances.

Here, Plaintiff received a cover letter from the Vice President of Human Resources explaining the Arbitration Agreement, a page of "**SIGNIFICANT FEATURES OF THE DOMINO'S ARBITRATION PROGRAM**," and a standalone, clearly titled three-page Arbitration Agreement separately addressing the duty to arbitrate, the class-action waiver, the jury-trial waiver, and a bolded thirty-day opt-out right. Apollon Decl. Exhs. A, B. Plaintiff admits he "recognize[s] [his] signature." McClusky Decl. ¶ 13.

That Plaintiff signed the Agreement alongside other onboarding paperwork does not change the analysis. An agreement signed among other onboarding documents is not procedurally unconscionable where its terms were disclosed and comprehensible. *Zuver*, 153 Wn.2d at 305–07. The rushed-300-pages-to-review narrative does not establish that Plaintiff lacked meaningful choice as to the separately titled Arbitration Agreement he physically signed—unlike the electronically signed onboarding documents. The opt-out right



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908

independently confirms meaningful choice: Plaintiff had thirty days to opt out and did not. Apollon Decl. ¶ 11.

Plaintiff now contends he was not given a copy of the Arbitration Agreement and would have opted out had he been. McClusky Decl. ¶ 17. But he does not say that he requested more time or copies, or that he could not access the Agreement through the Team Member Service Center site. His after-the-fact assertion that he would have opted out does not establish that Defendant deprived him of meaningful choice when the Agreement itself disclosed the opt-out procedure. On this record, Plaintiff cannot carry his burden to show procedural unconscionability.

## III. CONCLUSION

For these reasons, Plaintiff has not established exceptional circumstances warranting abstention, has not carried his burden to show that the FAA's transportation-worker exemption applies, and has not demonstrated that the Arbitration Agreement or its class-action waiver is unenforceable. Defendant therefore respectfully requests that the Court deny Plaintiff's request for a *Colorado River* stay, grant Defendant's Motion to Compel Arbitration, compel Plaintiff to arbitrate his claims on an individual basis, and stay this action pending completion of arbitration.

DATED this 30th day of October, 2026.

FISHER PHILLIPS LLP

By: *s/ Clarence M. Belnavis*
Clarence M. Belnavis, WSBA #36681
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101
Phone: (206) 682-2308
Email: cbelnavis@fisherphillips.com
*Attorneys for Defendant Domino's Pizza LLC*

*I certify that this memorandum contains 3,766 words, in compliance with the Local Civil Rules."*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies under the laws of the United States that on the date written below, I caused a true and correct copy of the foregoing document to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Adarsh N. Parthasarathy, WSBA #62319
Danielle E. Kim, WSBA #54154
Cassandra Lenning, WSBA #54336
Bibiyan Law Group, P.C.
701 Fifth Ave., 42nd Floor
Seattle, WA 98104
Telephone: (310) 601-5737
aparthasarathy@tomorrowlaw.com
dkim@tomorrowlaw.com
clenning@tomorrowlaw.com

*Attorneys for Plaintiff*

DATED this 30th day of October, 2026 at Seattle, Washington.

*s/ Lynn Van Eyck*
Lynn Van Eyck, Legal Secretary



FISHER & PHILLIPS LLP
1700 SEVENTH AVENUE, SUITE 2200
SEATTLE, WA 98101
Phone: (206) 682-2308 Fax: (206) 682-7908