UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SANTREL MCCLUSKY, Plaintiff, v. DOMINO'S PIZZA LLC, et al., Defendants. | CASE NO. C26-3189JLR ORDER |

## I. INTRODUCTION

Before the court is Defendant Domino's Pizza LLC's ("Domino's") motion to compel arbitration and stay these proceedings. (MTC (Dkt. # 12); Reply (Dkt. # 20).) Plaintiff Santrel McClusky opposes the motion. (Resp. (Dkt. # 17).) The court has considered the parties' submissions, the relevant portions of the record, and the governing law. Being fully advised,[1] the court DENIES Domino's motion to compel arbitration.

[1] Neither party requests oral argument, and the court concludes that oral argument would not assist it in its resolution of the motion. *See* Local Rules W.D. Wash. LCR 7(b)(4).

## II. BACKGROUND

This action arises from Mr. McClusky's employment as a Yard Driver at Domino's Kent, Washington Supply Chain Center. (*See generally* Compl. (Dkt. # 1-1).) Below, the court sets forth the relevant factual and procedural background of this case.

### A. Factual Background

Mr. McClusky began working at the Kent Supply Chain Center on November 20, 2025. (Apollon Decl. (Dkt. # 14) ¶ 7; McClusky Decl. (Dkt. # 18) ¶ 6.) The Supply Chain Center handles inbound Domino's product from locations inside and outside Washington State, and outbound product for delivery to locations throughout the Pacific Northwest. (Young Decl. (Dkt. # 13) ¶ 4; McClusky Decl. ¶ 25); *see also Oakley v. Domino's Pizza LLC*, 516 P.3d 1237, 1240 (Wash. Ct. App. 2022) (explaining, in a case also arising out of the Kent Supply Chain Center, that Domino's Supply Chain Division "supplies more than 225 types of products, such as dough balls, pizza toppings, napkins, and cleaning supplies" to Domino's stores). "For inbound product, a third-party carrier transports the product to the facility in the carrier's own truck, operated by the carrier's own driver." (Young Decl. ¶ 5.) Then, Domino's Warehouse Associates unload the product, and the carrier's driver departs the facility. (*Id.*) For outbound product, the Yard Driver moves one of Domino's trailers to the loading dock, where the Warehouse Associates load product into the trailer. (*Id.* ¶ 6.) After loading is complete, the Yard Driver moves the trailer from the loading dock and positions it for hand-off to a delivery driver who makes the outbound delivery. (*Id.*; *see also* McClusky Decl. ¶ 24.) Yard

Drivers generally play no role in loading or unloading product; instead, their "role is limited to moving trucks within the facility's yard." (Young Decl. ¶¶ 5-7.)

When he began working for Domino's, Mr. McClusky received and signed a copy of Domino's arbitration agreement ("Agreement"). (Apollon Decl. ¶¶ 7-8.) The Agreement is three pages long and includes a cover letter. (*Id.* ¶ 7, Exs. A (Cover Letter), B (Agreement).) The first page of the cover letter alerts the employee that, "by signing the Arbitration Agreement and not opting out, both [the employee] and [Domino's] are giving up various rights, including the right to a trial by jury as well as any right to arbitrate as a class representative, as a class member, or in a collective action." (Cover Letter at 1 (emphasis omitted).) The Agreement itself provides, in relevant part, that "any claim, dispute, and/or controversy" between the employee and Domino's "shall be . . . determined exclusively by mandatory, neutral, binding arbitration on an individual basis only" unless the employee opts out in accordance with the Agreement. (Agreement at 1.) The Agreement includes both class action and jury trial waivers. (*Id.* at 1-2.) The second page of the Agreement describes how to opt out of arbitration. (*Id.* at 2.) Mr. McClusky did not opt out. (Apollon Decl. ¶ 11.)

**B. Procedural Background**

Domino's terminated Mr. McClusky's employment on March 13, 2026. (*Id.* ¶ 12.) Shortly thereafter, Mr. McClusky filed two putative class action lawsuits against Domino's in King County Superior Court.

//

//

1. The Noncompete Action

On July 21, 2026, Mr. McClusky filed a lawsuit in which he alleges, on behalf of himself and a proposed Washington class, that Domino's violated Washington's Noncompete Act (the "Noncompete Action"). (*See* Lenning Decl. (Dkt. # 19) ¶ 33); *see generally* Complaint, *McClusky v. Domino's Pizza LLC*, No. 26-2-23364-1 KNT (King Cnty. Super. July 21, 2026), Dkt. # 1. Domino's did not remove the Noncompete Action to this court. (*See* Reply at 6 (asserting that the Noncompete Action was not removable under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)).) On August 27, 2026, Domino's moved to compel the Noncompete Action to arbitration based on the Agreement Mr. McClusky signed when he began his Domino's employment. (*See* Lenning Decl. ¶ 34, Ex. 24.) Although briefing is complete (*see id.* ¶ 38, Ex. 28), the motion is still pending.

2. This Action

Mr. McClusky filed the action now before this court on July 31, 2026. (*See* Compl. at 1.) He asserts, on behalf of himself and a proposed Washington class, that Domino's violated multiple Washington statutes and regulations by failing to provide meal and rest breaks, overtime pay, and paid sick leave to its hourly employees. (*See id.* ¶¶ 8.1-16.6.) Domino's removed the action to this court on September 4, 2026, pursuant to CAFA. (*See generally* Not. of Removal (Dkt. # 1).) It moved to compel arbitration on September 25, 2026. (*See* MTC.) The motion is fully briefed and ripe for consideration.

//

//

## III. ANALYSIS

Domino's asserts that the court must compel this action to arbitration under the Agreement and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2. (*See generally* Mot.) In response, Mr. McClusky argues that (1) the court should stay this action until the state court resolves the motion to compel arbitration in the Noncompete Action, or (2) if the court reaches the merits, (a) Mr. McClusky is a transportation worker exempt from the FAA and (b) the Agreement cannot be enforced because it is unconscionable under Washington law. (*See generally* Resp.) Having considered these arguments, the court denies Domino's motion to compel.

### A. The Court Denies Mr. McClusky's Request for a *Colorado River* Stay

As a preliminary matter, Mr. McClusky argues that the court should stay this action under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), because the question of whether the Agreement is valid and enforceable is already before the state court in the Noncompete Action. (Resp. at 7-15.) In response, Domino's asserts that a *Colorado River* stay is inappropriate primarily because the Noncompete Action will not resolve all of the issues in this case. (Reply at 3-6.) Domino's is correct.

In general, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction[.]" *Colorado River*, 424 U.S. at 817 (citations omitted). A district court may, however, dismiss or stay an action "due to the presence of a concurrent state proceeding for reasons of wise judicial

administration[.]" *Id.* at 818 (citations omitted). Courts in this Circuit consider the following factors when determining whether a *Colorado River* stay is warranted:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation;(4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 978-79 (9th Cir. 2011) (citation omitted). Courts must apply these factors "in a pragmatic, flexible manner with a view to the realities of the case at hand." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 (1983). As a result, "[t]he weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." *Id.* at 16. "Some factors may not apply in some cases . . . and, in some cases, a single factor may decide whether a stay is permissible[.]" *United States v. State Water Res. Control Bd.*, 988 F.3d 1194, 1203 (9th Cir. 2021) (citations omitted).

Here, the eighth factor controls because the Noncompete Action "will not resolve the entire case before the federal court." *Id.* at 1204. "[T]he existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes the granting of a stay." *Id.* at 1203 (citation and internal quotation marks omitted). Although the Noncompete Action may determine whether the Agreement is valid and enforceable, it cannot resolve the wage and hour claims Mr. McClusky raises here. Thus, there is more than a "substantial doubt" that the state court proceedings will not resolve all of the issues in this case. *See id.* Accordingly, the court denies Mr. McClusky's request for a

*Colorado River* stay. *See id.* at 1208 (declining to consider other *Colorado River* factors because the eighth factor was dispositive).

**B. The Court Denies Domino's Motion to Compel Arbitration**

1. <u>Mr. McClusky is Exempt from the Federal Arbitration Act</u>

The FAA generally governs arbitration agreements in contracts affecting interstate commerce. *See Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 118-19 (2001). Certain classes of workers, however, are exempt from the FAA. Under § 1 of the FAA, "'nothing' in the statute shall be used to compel arbitration in disputes involving 'contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.'" *Flowers Foods, Inc. v. Brock*, 608 U.S. 380, 384 (2026) (quoting 9 U.S.C. § 1). This exemption applies to workers whose work "play[s] a direct and necessary role in the free flow of goods across borders." *Id.* at 385 (quoting *Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246, 256 (2024)). A worker need not cross state lines or interact with a vehicle that crosses state lines to be engaged in interstate commerce. *Id.* "At least sometimes, a worker who transports goods on an intrastate leg of an interstate journey can qualify for § 1's exemption without satisfying either of those criteria." *Id.*

Here, although Yard Drivers do not personally transport Domino's product between states, and although they transport product only a small distance within the Supply Chain Center, they play a "direct, active, and necessary part in ensuring" that Domino's product is delivered from points outside Washington to its destinations in Washington and beyond. *Id.* at 387; (*see* Young Decl. ¶¶ 5-7). Yard Drivers move

Domino's trucks to the loading dock; remain in the truck while product is loaded; and position the loaded trucks for delivery to locations throughout the Pacific Northwest. (Young Decl. ¶¶ 5-7; McClusky Decl. ¶ 25); *see also Oakley*, 516 P.3d at 1243 (observing that Domino's Supply Chain Centers are "'simply part of a process' by which Domino's supplies its stores" (citation omitted)). On these facts, the court has little trouble concluding that Yard Drivers like Mr. McClusky are engaged in interstate commerce and, as a result, exempt from the FAA. *See* 9 U.S.C. § 1; *Flowers Foods*, 608 U.S. at 384.

Domino's contends that under *Lenz v. Yellow Transportation, Inc.*, 431 F.3d 348 (8th Cir. 2005), Mr. McClusky is subject to the FAA because his job duties were "tangential to the movement of goods." (Reply at 7-8.) In *Lenz*, however, the employee was a customer service representative who was required to:

> [p]rovide courteous, efficient, timely, and informed service to customers . . . [;] [r]eceiv[e] incoming telephone calls, answer questions and investigation decisions, as necessary[;] . . . [r]efer to others for answers as deemed appropriate[;] . . . [d]eliver personal service to customers via telephone contact in response [to] initiated inquiries[;] [e]nsure customer satisfaction by listening and responding to customer needs and requirements[; and] [u]se CRT mainframe and personal computer programs to review and/or modify customer service information.

*Lenz*, 431 F.3d at 350. The Eighth Circuit held that the employee was not exempt under § 1 because his "central task was to answer the questions of and provide information to [] customers, not to supervise packages moving in interstate commerce." *Id.* at 353. Unlike the employee in that case, Mr. McClusky had a direct role in the flow of Domino's

product from out of state, through the Supply Chain Center, and to its final destination. Accordingly, *Lenz* does not persuade the court to change its view.

Domino's reliance on *Walz v. Walmart Inc.*, No. C23-6083BHS, 2024 WL 2864230 (W.D. Wash. June 6, 2024), is also misplaced. The *Walz* court held that a worker who delivered goods from a local Walmart store to its local customers was not "engaged in interstate commerce" under § 1. *See id.* at *4-7 (distinguishing cases). Here, Mr. McClusky transported goods at the Supply Center while they were in transit to Domino's stores; he did not, for example, deliver pizzas from local Domino's stores to Domino's customers. Accordingly, *Walz*, too, is not persuasive. Because Mr. McClusky "play[s] a direct and necessary role in the free flow of goods across borders[,]" *Flowers Foods*, 608 U.S. at 385, he is exempt from the FAA.

<u>2. The Agreement's Class Action Waiver is Substantively Unconscionable</u>

Mr. McClusky asserts that the Agreement is unenforceable under *Oakley v. Domino's Pizza LLC*, in which the Washington Court of Appeals held that the class action waiver in Domino's arbitration agreement is substantively unconscionable under Washington law. (Resp. at 19-22 (discussing *Oakley*, 516 P.3d 1237).) The court agrees.

In *Oakley*, the Washington Court of Appeals applied Washington choice-of-law principles and concluded that Washington law, rather than Michigan law, governed an earlier—but substantially similar—version of Domino's arbitration agreement. *Oakley*, 516 P.3d at 1245; (*compare* Cover Letter & Agreement, *with* Pizl Decl. (Dkt. # 19-19) ¶ 7, Ex. 5 (*Oakley* cover letter and agreement)). The court then determined that the class action waiver in the arbitration agreement was substantively unconscionable because it

"frustrate[d] [Washington's] public policy of protecting workers' rights to undertake collective actions and ensure the proper payment of wages." *Id.* at 1246; *see also id.* at 1245-46 (discussing relevant cases). Finally, the court concluded that the class action waiver could not be severed from the arbitration agreement, and, as a result, the entire arbitration agreement was unenforceable. *Id.* at 1246.

Although Domino's asserted in its motion that Michigan law should apply to the Agreement (*see* Mot. at 6-7), it appears to abandon that position in its reply (*see generally* Reply). Instead, it argues only that (1) the Agreement's class action waiver is enforceable because Mr. McClusky is not exempt from the FAA and (2) the Agreement is enforceable because it is not *procedurally* unconscionable under Washington law. (*Id.* at 10-13.) Domino's first argument fails because, as the court held above, Mr. McClusky is exempt from the FAA's requirements. And with respect to its second argument, Domino's does not address *Oakley*'s holding that the class action waiver is *substantively* unconscionable under Washington law, nor does it argue that the waiver provision is severable from the Agreement. (*See generally* Mot.; Reply.) As a result, the court concludes that the Agreement is substantively unconscionable and unenforceable against Mr. McClusky. Therefore, the court denies Domino's motion to compel arbitration.

//

//

//

//

//

## IV. CONCLUSION

For the foregoing reasons, the court DENIES Domino's motion to compel arbitration (Dkt. # 12).

Dated this 16th day of November, 2026.

JAMES L. ROBART
United States District Judge